ALLEN, Respondent, vs. WEBER and another, Appellants.

*October 26 — November 17, 1891.*

*Watercourses: Title to bed of stream: Description in deed: Land bounded by "low-water mark:" Right to cut ice.*

1. The grantees of a strip of land described in their deeds as bounded on the east by the low-water mark on the west side of a river, take no title to any part of the bed of the stream beyond such low-water mark, and have no right to cut ice from the river, even though they purchased the land for the express purpose of building ice-houses thereon.

2. The grantor in the first conveyance of said strip of land was the owner also of a mill and dam and of all the land covered by the mill pond, which pond was the river referred to in the later deeds. *Held,* that a reservation, in such first conveyance, of the right to overflow the land conveyed by keeping the dam at a height not exceeding that fixed by a certain survey, did not indicate an intention to convey to the center line of the mill pond or river.

3. An act of the legislature, subsequent to said first conveyance, declaring the river a navigable stream, could not affect the rights of the parties.

APPEAL from the Circuit Court for *Waukesha* County.

Action to restrain the defendants from cutting ice on the plaintiff's mill pond, and for an accounting as to ice already cut and removed. The facts, as stipulated by the parties and found by the court, are substantially as follows:

The United States conveyed by patent to one Alonzo R. Cutler the N. E. ¼ of section 3, township 6, range 19 east, upon which quarter section are situated the so-called "Mill Reserve," and the land upon which the plaintiff's mill stands, and the land owned by the defendants. That part of the Fox river which ran through said quarter section was not a meandered stream or navigable river at the time said patent was issued, and the fee to the bed of the stream on that part of said quarter section which was subsequently known as the "Mill Reserve" vested in said Cutler.

Allen vs. Weber and another.

Through mesne conveyances from said Cutler the title to the land upon which the plaintiff's mill is situated and all the said Mill Reserve became vested in one Russell N. Kimball, and on February 15, 1876, said Kimball conveyed the whole thereof to one Benjamine Boorman. On February 16, 1876, said Boorman reconveyed to said Kimball a portion of said lands, parcel of the lands so reconveyed being the land now owned by defendants. Such land is described in the deed from Boorman to Kimball as follows: "A parcel of land on the west bank of Fox river, and being a part of the land known as 'Mill Reserve,' and bounded on the north by the town line between the towns of Waukesha and Pewaukee, and extending southerly to the continuation of the center line of Union street, and bounded on the west by the easterly line of the Northwest Addition to the plat of Prairieville, and extending from said easterly line of the Northwest Addition to the plat of Prairieville *easterly to the west bank of the mill pond on said Fox river at low water mark* as established by the height of the dam making said pond by a survey and measurement made by R. E. Merrill, surveyor, on the 24th day of July, A. D. 1866. . . . Saving and reserving to the said parties of the first part [Boorman and wife], their heirs and assigns forever, the right to overflow said land with the water of said Fox river and said mill pond; by keeping and maintaining said mill dam . . . at its present height or any other height not exceeding the height thereof as established and ascertained by survey and measurement thereof aforesaid."

In September, 1879, Russell N. Kimball and wife conveyed the strip of land above described to E. K. Kimball, and afterwards E. K. Kimball and wife conveyed to each of the defendants an undivided half of said land. In all of said conveyances the description of the land is that contained in the following opinion, and there is no reservation or mention of any right to overflow the land.

Through divers conveyances by and through divers persons the title of Boorman to the land upon which the mill is situated, and to all that portion of the Mill Reserve not before conveyed, vested in the plaintiff, and he was in possession thereof at the time of the commencement of this action. For many years he and his grantors had claimed and exercised acts of ownership over the entire bed of the stream upon said Mill Reserve.

In January, 1891, the defendants began cutting and removing ice from the mill pond situated upon said Mill Reserve, opposite the lands owned by said defendants; and to restrain such acts this action was brought. Other facts will appear from the opinion. The defendants appeal from the judgment in favor of the plaintiff.

*T. E. Ryan* and *E. Merton,* for the appellants: When it is made to appear that lands conveyed by deed extend to and cover the banks of a navigable stream, the presumption is that the intention was to convey all the rights of the grantors to the bed of the stream to the center thereof; and in order to defeat the presumption there must be clear proofs that such was not the intention of the parties. The fact that, in giving the boundary of the premises conveyed to defendants, mention is made of the line known as low-water mark would seem to indicate that the intention was to convey to the center of the stream. *Jones v. Pettibone,* 2 Wis. 308; *Right v. Day,* 33 id. 260; *Pettibone v. Hamilton,* 40 id. 402; *Kneeland v. Van Valkenburg,* 46 id. 437; *Norcross v. Griffiths,* 65 id. 599; *Dovaston v. Payne,* 2 Smith, L. C. (8th ed.), *142; *Codman v. Evans,* 1 Allen, 446; *Bay City G. L. Co. v. Industrial Works,* 28 Mich. 183. A grant of land bounded by a non-navigable stream extends to the thread of the stream. *Norcross v. Griffiths,* 65 Wis. 599; *Ex parte Jennings,* 6 Cow. 518; *Case v. Haight,* 3 Wend. 635; *Canal Commissioners v. People,* 5 id. 448; *People v. Canal Appraisers,* 13 id. 371; *Starr v. Child,* 20 id. 152;

*Walton v. Tifft*, 14 Barb. 219; *Lowndes v. Dickerson*, 34 id. 592; *Varick v. Smith*, 5 Paige, 143; *Ingraham v. Wilkinson*, 4 Pick. 268; *Home v. Richards*, 4 Call (Va.), 441. The defendants had the right to use the river for fishing, fowling, rowing, skating, cutting ice for use or sale. *Wood v. Fowler*, 40 Am. Rep. 330; *Hittinger v. Eames*, 121 Mass. 539; *Gage v. Steinkrauss*, 131 id. 222; *Rowell v. Doyl*, id. 474; *People's Ice Co. v. Davenport*, 149 id. 322; *Brastow v. Rockport Ice Co.* 77 Me. 100; *Woodman v. Pittman*, 79 id. 456, 1 Am. St. Rep. 342; *State v. Pottmeyer*, 33 Ind. 402, 5 Am. Rep. 224; *Mill River W. M. Co. v. Smith*, 34 Conn. 462; *Marshall v. Peters*, 12 How. Pr. 218; *Myer v. Whitaker*, 55 id. 376; *Higgins v. Kusterer*, 41 Mich. 318, 32 Am. Rep. 160; *People's Ice Co. v. Steamer "Excelsior,"* 44 Mich. 229, 38 Am. Rep. 246; *Paine v. Wood*, 108 Mass. 173; *Washington Ice Co. v. Shortall*, 101 Ill. 46.

*C. E. Armin*, for the respondent, cited *Smith v. Ford*, 48 Wis. 159–163; *Murphy v. Copeland*, 51 Iowa, 515, *S. C.* 58 id. 409, and cases there cited; *Green v. Nunnemacher*, 36 Wis. 50–56; *Halsey v. McCormick*, 13 N. Y. 296; *People ex rel. Comm'rs v. Supervisors*, 125 Ill. 9; *Jones v. Parker*, 99 N. C. 18; *Lembeck v. Nye*, 47 Ohio St. 336; *Child v. Starr*, 4 Hill, 369; *Cook v. McClure*, 58 N. Y. 437; Brantley, Pers. Prop. sec. 98; Lawson, Rights & Rem. sec. 1345.

ORTON, J. The respondent is the owner of that part of the N. E. ¼ of section 3, township 6, range 19 E., which is known as the "Saratoga Mills Property," at Waukesha, and of that portion of the Mill Reserve and water used in connection therewith on the Fox river not heretofore conveyed to others.

The appellants are the owners of a strip of land containing about two acres on the westerly side of the mill-pond of the plaintiff, on which they have erected an ice-house for

the storage of ice cut from Fox river or said mill-pond for the use of Bethesda Brewery, and for other purposes. This strip is described in their deeds as follows: "Beginning at a point on the center of Union street, where the same presumably intersects the easterly line of lot 4, in the Northwest Addition to the plat of Prairieville [now village of Waukesha]; thence running easterly on the continuation of the center line of Union street *to low-water mark* on the west side of Fox river; thence running northerly *along the low-water mark* on the said westerly side of Fox river to the town line, where said town line presumably intersects and divides the towns of Pewaukee and Waukesha; thence running west along the said town line to the northeast corner of block X; thence southerly along the east line of said block X, and southerly along the corner of said block X (or the center of Union street), being the place of beginning; containing two acres, be the same more or less."

The respondent brings this suit to restrain the appellants from cutting ice on said mill-pond, and for an accounting of ice already taken away from said pond. His action is predicated upon his ownership of the bed of the river or pond, and to low-water mark on the west side thereof, the east line of the appellants' land.

The appellants defend (1) as the owners of the fee in the soil covered by the river or pond to the center thread thereof, by virtue of the above description of their strip of land on the west side of said river or pond; (2) as riparian owners of the shore of said river or pond as a navigable stream; (3) on the ground that the purchase and ownership of the said strip of land were solely for the purpose of building ice-houses thereon, and to obtain ice from said pond.

The judgment is that the plaintiff is the owner in fee of all that portion of the bed of Fox river embraced within the limits of the mill reserve in the town of Waukesha, and

was at the commencement of the action, and that the east boundary of the lands owned by the defendants upon the west side of Fox river is limited *to low-water mark* upon the westerly side of Fox river, and that by the conveyance they took no title in fee as riparian proprietors to any part or portion of the bed of said Fox river easterly from the line fixed in said deed as low-water mark on the west side of Fox river. It is further adjudged that the plaintiff recover of and from the defendant his damages, assessed at the sum of six cents, and his costs, etc., and that the injunction be dissolved.

The mills and mill-pond at Waukesha are so ancient that in all the later conveyances the pond is called the Fox river at that place, and the low-water mark of the river means the low-water mark of the pond. The above-stated defenses constitute the points made by the learned counsel of the appellants on this appeal from the above judgment, and they will be considered in their order.

1. The above description in the conveyances to the appellants makes their strip of land extend to the center of the pond. The description of their east line is peculiar. It is "the continuation of the center line of said Union street *to the low-water mark* on the west side of Fox river; thence northerly *along the low-water mark on the said westerly side* of Fox river to the town line," etc. The doctrine asserted by the learned counsel, that as to lands which extend to and cover the banks of navigable streams, the presumption is that it was the intention to convey all the rights of the grantors to the bed of the stream, to the center thereof, is undoubtedly correct. But this is a mere *presumption*, and may be rebutted by the strong language of the deed, clearly indicating the intention to establish the line at the margin of the stream. There could be no language of description more clearly indicating the exact line than is found in the conveyances of this strip of land: " *To*

low-water mark; thence northerly *along* the low-water mark." This language could have no other meaning than to indicate the intention of the grantors to limit the premises, and establish their boundary at that line " *along low-water mark.*"

In principle this case is decided in *Greene v. Nunnemacher,* 36 Wis. 50. That was a case for abatement of the nuisance created by a distillery. One part of the damages was for corrupting the waters of the Kinnickinnic river, and rendering them unfit for use by the plaintiff as a riparian proprietor on said river. The deed by which the plaintiff held his premises described his land as " *running along the bank*" of said river. The present chief justice said in his opinion: " For, according to the description of the premises as given in the deed, there is reason for saying that they *are limited to the river bank,* and do not in fact include the bed of the stream or the waters of the same." Chief Justice RYAN, then at the bar, was counsel for the appellant, and cited the following authorities to the point that the description of plaintiff's land limits the same to the bank of the creek: Ang. Watercourses, §§ 8, 26; *Cary v. Daniels,* 5 Met. 236; *Crittenton v. Alger,* 11 Met. 281; *Starr v. Child,* 20 Wend. 149; *S. C.* 4 Hill, 369; *Hatch v. Dwight,* 17 Mass. 289; *Starr v. Child,* 5 Denio, 599. This shows that the point was well considered by the court. The language " along the bank" is ·not as certain and specific as the language " along low-water mark."

In the following cases the line is limited by the description, and no part of the bed of the stream is conveyed: " Thence northeasterly up the west bank of Pine creek." *Murphy v. Copeland,* 51 Iowa, 515, 58 Iowa, 409, and cases cited. " To and along the bank." *Halsey v. McCormick,* 13 N. Y. 296; *People ex rel. Comm'rs v. Supervisors,* 125 Ill. 9. " As far as high-water mark" is the outer line of the overflow of a mill-pond so described in the convey-

ance. *Jones v. Parker*, 99 N. C. 18. "To the Genesee river; thence northwardly along the *shore* of said river." *Starr v. Child*, 20 Wend. 149. In *Murphy v. Copeland*, 51 Iowa, 515, it was held that "along the bank" was equivalent to "along low-water mark;" and the same in *Halsey v. McCormick*, 13 N. Y. 296. In *Cook v. McClure*, 58 N. Y. 437, the language is: "To a stake near the high-water mark of the *pond*, running thence along the *high-water mark* of said pond, to," etc.,— and it was held that the line was limited at high-water mark, and would not extend even to low-water mark. This case is exactly in point. In *Bradford v. Cressey*, 45 Me. 9, the language is: "Thence east until it strikes the creek on which the mill stands; thence southwesterly on the west bank of said creek,"— and it was held that "the grantee was restricted to the bank of the creek." The line so described is a monument and fixed boundary. Ang. Watercourses, § 25.

From the language of the description of the defendants' strip of land itself, it is perfectly clear that low-water mark was made a fixed and permanent boundary. If the situation of the strip on the pond is consulted, that would evince the same intention. It was contiguous to a very old mill-dam, belonging to the grantors, *now* called the "Fox River" at that point. It was not likely that it was intended to give the grantees of this strip any interest in the waters of the pond, or any control over the water-power, or interference with it. Such a situation of the strip clearly indicates the intention to so limit the eastern line to low-water mark, and not have it extend *ad filum aquæ* of the pond. Such a reason was held to prevail in *Smith v. Ford*, 48 Wis. 115. The owners of the water-power and mill-dam are the only riparian proprietors of the land covered by the pond to low-water mark on the west, and therefore owned the ice formed on the pond. Brantl. Pers. Prop. § 98; Lawson, Rights, Rem. & Pr. § 1345.

2. The declaration made by the legislature of 1868,[1] that Fox river is a navigable stream, could not possibly affect the rights of the owners of the dam, acquired long before, or make the dam navigable, or any other part of Fox river, in any other sense than mere theory. The defendants' rights are fixed by their deeds, and that act certainly could not change them in the least.

3. The object of the purchase of the strip — to build ice-houses on it — would not imply ownership of the ice, for he could procure from the owner the right to cut ice on the pond, or buy the ice cut by others, and fill his ice-house in that way. But at best such a purpose would not affect the deed, or the natural construction of its language. Deeds would be very inconclusive if they were to be governed by the use the purchaser intended to make of the land. Such a use might require twice the quantity of the land conveyed, with a complete change of its boundaries.

4. It is contended that a reservation in the first deed of this strip of the right of flowage by the owner of the dam indicates an intention to convey to the center of the pond. By that reservation the grantor reserved the right to flow the whole strip, and not merely the land thus covered by the pond. But there is a margin between high and low water marks the grantor reserved the right to flow, which would be entirely consistent with the grantees' line being limited to low-water mark. That reservation need not affect the construction of the deed in respect to its conveyance to the center of the pond, for it would have full and complete operation and effect over the land granted.

---

[1] Sec. 1, ch. 358, P. & L. Laws of 1868, is as follows: "The Fox river, from the village of Waukesha, in Waukesha county, to the village of Waterford, in Racine county, is hereby declared a public navigable highway, and may be used as such by all persons wishing to navigate the same." — REP.

We can find no error in the record. The judgment is evidently correct.

*By the Court.*— The judgment of the circuit court is affirmed.

See note to this case in 14 L. R. A. 361.— REP.