NE-PEE-NAUK CLUB, Appellant, vs. WILSON and others, Respondents.

*May 1 — May 21, 1897.*

*Waters: Riparian rights: Hunting and fishing.*

1. By the expansion of a small stream a shallow body of water from thirty-five to sixty-five rods in width and about three miles long was formed, through which there was little or no current during the greater part of the year. In summer the rushes and wild rice grew luxuriantly and the surface was interspersed with mud, marsh, and bog, leaving small openings of clear water but no regular channel. In ordinary stages of water it was navigable only by small canoes and skiffs. It had been meandered by the government surveyors, and was referred to in the field notes as a "lake" or "marsh." *Held*, that it was not a watercourse but a lake, and hence that the title of the riparian owners stopped at the water line.

2. Riparian owners upon a lake, the soil under which belongs to the state, have no exclusive right to hunt and fish upon its waters.

APPEAL from a judgment of the circuit court for Green Lake county: GEO. W. BURNELL, Circuit Judge. *Affirmed.*

The action is in equity to restrain trespass to lands. The plaintiff claims to be the owner of certain lands in the county of Green Lake, which border upon a shallow body of water or marsh popularly known as "Mud Lake." It claims, by

Ne-pee-nauk Club vs. Wilson and others.

virtue of such riparian ownership, to be the owner of Mud Lake itself. The lands under Mud Lake are valuable only for the privilege which the lake affords for fishing and the hunting of wild fowl, and for such exercise and recreation. The lake is shallow, so that the lands are in the nature of marsh or swamp lands. In the summer time they produce large crops of wild rice and other vegetation, making a natural resort for wild fowl for a nesting and feeding ground. The plaintiff desired to keep this as a private preserve for a shooting ground and place of recreation for its members and guests. The defendants had at various times, for several years, hunted wild duck and other water fowl upon this lake, and asserted the right and purpose of continuing to do so in the future. The action was brought to restrain them from doing so.

The question controverted is the title to the lands under Mud Lake,— whether the plaintiff owns them by virtue of riparian ownership, or whether the title is in the public. This depends on whether Mud Lake is a watercourse or a meandered lake. It varies in width from thirty-five rods to sixty-five rods, and is about three miles in length. In spring and fall and after heavy rains, the whole surface is covered with water. In summer much of the water disappears, leaving some considerable expanses of water interspersed with mud, marsh, and bog. In the places which are covered by water, rushes and wild rice grow luxuriantly. There are small openings of clear water, but no regular channel anywhere, except at a place called the "Narrows," below the point where the alleged trespasses were committed. In ordinary stages of water it was navigable only by small craft, like canoes or hunting skiffs, propelled by paddles or push poles. What is called "Mud Lake" is formed by the expansion or dispersion of the waters of a small stream called "Grand River." After the Grand river enters into and becomes Mud Lake, it follows no defined channel, but distrib-

utes itself through the marsh, and appears again as a stream only at or near the point called the "Narrows." Mud Lake is in fact, for the most part, a low, wet marsh, producing a large growth of wild rice and other vegetation, and unnavigable by any natural channel, by any kind of boat, through its entire length, during the greater portion of the year. The lands bordering upon it were meandered by the government surveyors. In the field notes it was referred to as a "lake" or "marsh."

The court found that Mud Lake is a meandered lake, and that the title to the lands under it is in the public and not in the plaintiff, and dismissed the complaint, with costs against the plaintiff. The plaintiff appeals.

For the appellant there was a brief by *Bashford, O'Connor & Aylward,* and oral argument by *R. M. Bashford.* They contended, *inter alia,* that the widespread of Grand river at the place where the alleged trespasses were committed is not a lake, but is a stream or watercourse. *Case v. Hoffman,* 84 Wis. 438; *Spelman v. Portage,* 41 id. 144; *Hoyt v. Hudson,* 27 id. 656; *Fryer v. Warne,* 29 id. 511; *Eulrich v. Richter,* 37 id. 226; *Mohr v. Gault,* 10 id. 513; *Bassett v. Salisbury Mfg. Co.* 43 N. H. 569; *Hilliker v. Coleman,* 73 Mich. 170; *Rummell v. Lamb,* 100 id. 424; *Pyle v. Richards,* 17 Neb. 180; *Morrissey v. C., B. & Q. R. Co.* 38 id. 406; *Rigney v. Tacoma L. & W. Co.* 26 L. R. A. 425, 9 Wash. 576; *Gould, Waters,* §§ 4, 41, 263, 264; 28 Am. & Eng. Ency. of Law, 944–946; *West v. Taylor,* 16 Oreg. 165; *Montgomery v. Locke,* 72 Cal. 75; *Macomber v. Godfrey,* 108 Mass. 219; *Hinkle v. Avery,* 88 Iowa, 47; *Gillett v. Johnson,* 30 Conn. 180; *Shields v. Arndt,* 4 N. J. Eq. 234; *Mitchell v. Bain,* 142 Ind. 604; *Lambert v. Alcorn,* 144 Ill. 313; *Peck v. Herrington,* 109 id. 611; *Fuller v. Shedd,* 161 id. 462; *Potter v. Howe,* 141 Mass. 357; *Palmer v. Waddell,* 22 Kan. 352; *Missouri P. R. Co. v. Keys,* 55 id. 205; *Crawford v. Rambo,* 44 Ohio St. 279; *Byrne v. M. & St. L. R. Co.* 38 Minn. 212;

Ne-pee-nauk Club vs. Wilson and others.

*Luther v. Winnisimmet Co.* 9 Cush. 171; *Morrison v. B. &
B. R. Co.* 67 Me. 353. If, however, the widespread is in
fact a lake and not a watercourse then the plaintiff had an
exclusive right to hunt and fish thereon as an incident to its
ownership of the surrounding lands bordering on its waters,
the body of water not being navigable in fact. *Hardin v.
Jordan,* 140 U. S. 371; *Bristow v. Cormican,* 3 App. Cas.
641; *Beckman v. Kreamer,* 43 Ill. 447; *Freary v. Cooke,* 14
Mass. 488; 2 Bl. Comm. 39, 40; 3 Kent, Comm. 409–418;
*Comm. v. Chapin,* 5 Pick. 199; *Hooker v. Cummings,* 20
Johns. 90; *Deuterman v. Gainsborg,* 9 App. Div. 151;
*Cobb v. Davenport,* 32 N. J. Law, 369; *Sterling v. Jack-
son,* 69 Mich. 488; *People v. Silberwood,* 67 N. W. Rep.
1087; *State v. Shannon,* 36 Ohio St. 423; *Lembeck v.
Nye,* 47 id. 336; *Chisolm v. Caines,* 67 Fed. Rep. 285;
Gould, Waters, §§ 183, 230; *Santa Paula Water Works
v. Peralta,* 113 Cal. 38; *New England T. & S. Club v.
Mather,* 68 Vt. 338; *Boorman v. Sunnuchs,* 42 Wis. 233;
*Reysen v. Roate,* 92 id. 543; *Priewe v. Wis. State L.
& I. Co.* 93 id. 534. The act of trespass threatened by
the defendants would result in an irreparable injury to
the plaintiff's property, for the uses and purposes for which
it is held, as is shown by the particular allegations of fact
made in the complaint and by the testimony offered on the
trial.   *Wilson v. Mineral Point,* 39 Wis. 160; *Trustees of
German Evang. Cong. v. Hoessli,* 13 id. 348; *Lutheran Evan-
gelical Church v. Gristgau,* 34 id. 328; *Neshkoro v. Nest,* 85
id. 126; *Eau Claire v. Matzke,* 86 id. 291; *Gause v. Perkins,*
3 Jones Eq. 177; *Powell v. Cheshire,* 70 Ga. 357; *Mayor,
etc. of Frederick v. Groshon,* 30 Md. 436, 445; *Haines v. Hall,*
17 Oreg. 165; *Hillman v. Hurley,* 82 Ky. 626; *Shipley v.
Ritter,* 7 Md. 408; *Puckette v. Hicks,* 39 La. Ann. 901; *Cres-
cent City L. S. L. & S. H. Co. v. Police Jury,* 32 id. 1192;
*Mooney v. Cooledge,* 30 Ark. 640, 642; *Rigney v. Tacoma L.
& W. Co.* 26 L. R. A. 425; *Lembeck v. Nye,* 47 Ohio St. 336.

The fact that the defendants are pecuniarily irresponsible is further ground for the interposition of a court of equity to enjoin trespass. 2 Story, Eq. Jur. § 928; *Hanly v. Watterson,* 39 W. Va. 214; *Gause v. Perkins,* 3 Jones Eq. 177; *Musselman v. Marquis,* 1 Bush, 463; *Hillman v. Hurley,* 82 Ky. 626; *Lembeck v. Nye,* 47 Ohio St. 336; *Milan Steam Mills v. Hickey,* 59 N. H. 241; *Owens v. Crossett,* 105 Ill. 354; *Britton's Adm'r v. Hill,* 27 N. J. Eq. 389; *Martin v. Davis,* 96 Iowa, 718; *Wilson v. Hill,* 46 N. J. Eq. 367. The injunction should issue in order to prevent a multiplicity of suits. *Pride v. Weyenberg,* 83 Wis. 59; *Musselman v. Marquis,* 1 Bush, 463; *Ellis v. Wren,* 84 Ky. 254; *Hillman v. Hurley,* 82 id. 626; *John A. Roebling Sons' Co. v. First Nat. Bank,* 30 Fed. Rep. 744; *Lembeck v. Nye,* 47 Ohio St. 336; *Mills v. New Orleans Seed Co.* 65 Miss. 391; *Owens v. Crossett,* 105 Ill. 354; *Shaffer v. Stull,* 32 Neb. 94; *Wilson v. Hill,* 46 N. J. Eq. 367; 1 High, Injunctions, § 12; 1 Pomeroy, Eq. Jur. § 245; 3 id. § 1357.

For the respondents there was a brief by *Bouck & Hilton,* and oral argument by *Gabe Bouck.*

NEWMAN, J. The only question in the case is whether the so-called "Mud Lake" is a natural, permanent, inland body of water, such as is not properly a watercourse, and meandered by the government surveyors; for, if it is a natural inland body of water which is not properly a watercourse, the title of the riparian owner stops at the water line, and the title to the land which is under the water is in the state. This court has laid down one' rule for running water, and another for lakes and ponds. In the former case the riparian owner owns to the thread of the current; in the latter, to the water line. And no distinction has been made on account of the size of either stream or pond. It is unimportant if the common law, as related to the title to lands under lakes and ponds, was different. It is merely a ques-

tion of local law. Grants by the United States of lands bounded by lakes and streams are to be construed and given effect according to the law of the state in which the lands lie. And each state determines for itself to what extent it will retain and exercise its prerogative over lands under such streams and bodies of water. *Hardin v. Jordan,* 140 U. S. 371; *McLennan v. Prentice,* 85 Wis. 427.

It is well settled in this state that grants by the United States, of lands bounded by a meandered lake or other permanent body of water, convey title only to the natural shore of the body of water, while the title to the land which is under the water is in the state. *Diedrich v. N. W. U. R. Co.* 42 Wis. 248. And the rule is the same whether the body of water can be made practically useful for the purposes of navigation or not (*Boorman v. Sunnuchs,* 42 Wis. 233), irrespective of its size or depth.

It is undisputed that Mud Lake was meandered by the government surveyors. It is clear that it is an inland body of water of permanent character. While it might with entire propriety and accuracy be called a marsh or swamp, the name by which it shall be designated is not controlling upon the question of the title to its bed. It has very little, if any, movement of its water from its head towards its outlet during the greater part of the year. It is said that the controlling distinction between a stream and a lake or pond is that in the one case the water has a natural motion,— a current,— while in the other the water is, in its natural state, substantially at rest; and this entirely irrespective of the size of the one or the other. But not every sheet of water in which there is a current from its head towards its outlet is therefore a stream. Angell, Water Courses, 6th ed. (Perkins), § 4f. It is said that even the large lakes have such a current. The trial court found that this was not a stream or watercourse, but was a "shallow, muddy lake or marsh." Such it is clearly shown to be by the evidence.

The plaintiff does not own the lake or the soil under it. It is owned by the state. The right of fishing and fowling upon such waters is in the owner of the soil which is under the water. *Hardin v. Jordan*, 140 U. S. 371; 8 Am. & Eng. Ency. of Law, 31; 3 Am. & Eng. Ency. of Law, note on p. 166, and cases cited; Washb. Easem. *410; *Bristow v. Cormican*, 3 App. Cas. 641. In this case it is in the public, which has not in any way granted its right to the plaintiff. The plaintiff's right to hunt and fish over this lake was equal to, but not superior to, the right of either defendant. It had no cause of action against the defendants. Its complaint was properly dismissed on the merits.

*By the Court.*— The judgment of the circuit court is affirmed.

On the question of the ownership of the bed of lakes and ponds, see a note to *Gouverneur v. National Ice Co.* (134 N. Y. 355), in 18 L. R. A. 695.— Rep.