SKALITSKY and wife, Appellants, vs. CONSOLIDATED BADGER Co-operative and another, Respondents.*

*January 13—February 17, 1948.*

* Motion for rehearing denied, with $25 costs, on April 13, 1948.

For the appellants there was a brief by *Fischer, Brunner & Strossenreuther* of Shawano, and oral argument by *L. J. Brunner.*

For the respondent Consolidated Badger Co-operative there was a brief by *Matthew M. Wallrich, James H. Larson,* and *Lloyd G. Andrews,* all of Shawano, and oral argument by *Mr. Larson.*

For the respondent city of Shawano there was a brief by *Louis W. Cattau,* city attorney.

FOWLER, J. The case is an appeal from a judgment dismissing a complaint on the merits after trial to the court. It involves a very interesting story which started in 1850 when a dam was built across a creek that constituted the outlet of Shawano lake into the Wolf river. The dam was built for the double purpose of creating a dam to furnish water power to run a gristmill and to make a waterway to sluice logs down from the lake to the river. The head of the dam was about nine feet and it backed water two and a half miles up to the lake. The creek was not meandered in the government survey, and the creek was not navigable. Ever since the dam was built the pond has been navigable in fact up to the lake. The dam and west part of the pond are in section twenty-five of township twenty-seven north of range fifteen east. The adjacent portion of the pond is in section thirty of township twenty-seven, range sixteen east and extends thence east to the lake. Sawyer and Andrews by 1855 became joint owners of the dam, mill, and of the part of the bed of the pond lying in section twenty-five and also of the forty adjacent to the east. They operated the mill and sluiced logs down from the lake for fifteen years or so when they sold to Kast by land contract in 1867. The sale was confirmed by assignment in 1871. Kast agreed by the contract to keep the pond open for sluicing of logs. Kast ran the gristmill, a sawmill, and the pond for twenty-five years. He then contracted to sell to the Shawano Water Power & River Improvement Company, and assigned pursuant to the contract in 1898. This assign-

ment particularly described by metes and bounds the same parcel described in the contract and assignment from Sawyer and Andrews to Kast. It also recited that it assigned "all our [Kast's] right, title and interest in and to so much of the following pieces or parcels of land . . . as is located up to high water mark of Kasts mill pond" as was within the particular description by metes and bounds. It also recited: "This assignment to include the dam formerly located on said premises with all the appurtenances, rights and privileges thereunto belonging and appertaining and it is also understood to include all our interest of whatever nature in and to the Shawano pond." In 1894 the Shawano Water Power & River Improvement Company had erected another dam a short distance west of the original dam.

The property thus assigned to the Shawano Water Power & River Improvement Company was conveyed to the defendant Wolf River Paper & Fiber Company which still owns and operates the property. In 1928, the city of Shawano, in order to overcome a stagnant condition of the water adjacent to the southerly shore of the pond and to create a city park took a quitclaim deed from the paper company to a strip of land adjacent to the west and south shore of the pond and began to fill in the land so deeded and has up to this time filled in a large portion thereof and is continuing with its filling of the rest. In 1934, the city became unable from its local water supply to furnish the Consolidated Badger Co-operative with all the water needed to operate its plant. It therefore by agreement permitted the Co-operative to dig a ditch across the park land it had made by filling in and to lay a pipe therein from its plant out to the water of the pond, and to construct a pumping station at the outlet, and a power line thereto.

This was the situation when the plaintiffs instituted the instant suit. They allege that they own the west one hundred five feet of lot one of block twenty-six of Sawyer and Andrews plat of Shawano, which is admitted, and claim as a consequence of said block being shown on the plat as extending to the south

shore of Shawano pond that they own the land filled in by the city to the north of the original shore line of their lot; claim the deed of the paper company to the city is void and constitutes a cloud on their title to said made land; claim that the Co-operative wrongfully maintains said ditch and pipe and power line across their said land and refuses, to their damages in the sum of six cents, to remove said structures and surrender possession of their said land and threatens to enlarge its structures across their land. The relief to which the plaintiffs apparently consider themselves entitled is ejectment, removal of cloud from their title, injunction against continuing trespass; mandatory injunction of removal of structures and damages. It is quite manifest, however, that unless they own the land made by the city's fill they have no right of action whatever. We shall determine whether they own the made land north of their one hundred five feet.

It is stipulated that on November 29, 1870, Sawyer and Andrews, being then the owners, "platted that part of the southwest quarter of the southwest quarter of section thirty, township twenty-seven, north of range sixteen east and section twenty-five, township twenty-seven, north of range fifteen 'east lying south of the millpond' into lots, blocks and streets" of which plat lot one of block twenty-six is a part. The dimensions of lot 1, block twenty-six at the time of the original plat are stipulated as "one hundred fifty-two feet on the west boundary, two hundred fourteen feet on the south boundary, one hundred sixty-eight feet on the east boundary, with the pond as the north boundary."

We think this language plainly imports that only lands south of the pond as it then existed were platted, and that the water line of the pond as it then existed was the boundary of the plat and of block twenty-six of the plat. As the plat did not extend beyond the water line, block twenty-six comprised no land north of that line.

Prior to the time when the plat was made Sawyer and Andrews had by contract sold the land under the water of the

pond, described by metes and bounds to Kast and had surrendered possession of the property and the whole pond to him. Plaintiffs' lot is outside the metes and bounds of the description but the intention of the parties, no doubt, was that Kast was to take the title to the whole of the land owned by Sawyer and Andrews covered by the pond just as he specifically took title to the land under the part of the pond particularly described. Sawyer and Andrews retained no right in the pond except to sluice logs down it from the lake and Kast was to keep a sluiceway open for them. The plaintiffs base their claim upon the rule that when one buys land bordering on a stream he takes to the thread of the stream unless it is otherwise specifically provided. Plaintiffs' land does not border on a stream, but on a pond artificially made, and the pond, as the trial judge expressly found, has no thread. The plattors did not intend by dedicating their plat to extend the ownership of the platted land beyond the boundary of the land they expressly purported to plat. The physical situation indicates clearly that the plattors could not have contemplated such a construction of their plat as plaintiffs contend for. At the west end of block twenty-six the shore line of the pond makes an abrupt turn to the north at nearly right angles. Plaintiffs claim the made land lying north of the original shore line is included within the extended east and west lines of their lot. But the plat also shows that the extended south and north lines of block twenty-four lying to the north of plaintiffs' lot would cross the extended lines of plaintiffs' lot lines. The owners of block twenty-four own the made land within the crossed extended lines of their block just as much as the plaintiffs' own it. Manifestly the plattors did not contemplate or intend any double ownership of land under the water of the pond, and no such result can be imputed to the plat.

The case involves nothing but alleged violation of rights of plaintiffs to their use and possession of land of which they claim to own the fee. This land was originally under the water of the pond. Title to the bed of land covered by water

when it exists rests on title to the bed itself, not on title to the bank. *Diedrich v. Northwestern Union R. Co.* 42 Wis. 248. The plaintiffs, nor their grantor, as successor grantee from the plattors, never got title to the bed of the pond. They only got title to land on the bank. Plaintiffs get no support to their contention of title under the rule of *Arnold v. Elmore,* 16 Wis. *509, that the lands of city or village lots lying on the banks of a stream are presumed to run to the center of such stream "unless the contrary intent appears." The plaintiffs' lot does not lie on the bank of a stream but on the shore of an artificial pond, and the intent of the plattors that the land of the plaintiffs' lot should not run to the center of the pond plainly appears. Without worrying the point further we will close the discussion by holding with the trial court that the making of the plat created no title to land in the bottom of the pond, and the plaintiffs having secured no such title from any other source, they have no title to the land made by the city's fill and no right of action whatsoever. We will remark further that the suggestion that land made by accretion aided by filling gives title has no merit because there was no accretion. The bank of plaintiffs' land existed from 1850 to 1928 without any accretion whatever. All land formed since 1928 adjacent to the original water line has been made by fill alone. The doctrine of acquisition by accretion is entirely beside the case.

The case being rested on the point stated there is no occasion to consider any of the numerous other points discussed in the briefs and in the opinion of the circuit court, and we see no occasion to cite further authorities in support of the conclusion reached. The law respecting title applicable is sufficiently stated in the early cases cited herein and has in no wise been changed since. As to the respect to which these cases are entitled see *Milwaukee v. State,* 193 Wis. 423, 429, 214 N. W. 820.

*By the Court.*—The judgment of the circuit court is affirmed.

The following memorandum was filed April 13, 1948:

PER CURIAM. (*on motion for rehearing*). On plaintiffs' motion for a rehearing attention is called to error in the following statement on sheet 3 of the typewritten opinion, filed February 17, 1948, to wit: "Kast in 1892 had erected another dam a short distance east of the original dam which superseded the original dam." That statement should have been, and it is hereby corrected to read: "In 1894 the Shawano Water Power & River Improvement Company had erected another dam a short distance west of the original dam." However, these matters do not affect the reasoning and determination of the case, as stated in the opinion and mandate filed; and as plaintiffs' contentions in other respects cannot be sustained, the motion for rehearing must be denied.

Motion for rehearing denied with $25 costs.