MAYER and wife, Respondents, v. GRUEBER and wife, Appellants.

*November 4—November 30, 1965.*

For the appellants there was a brief by *Howard & Burns*, attorneys, and *James G. Howard* of counsel, all of Milwaukee, and oral argument by *James G. Howard*.

For the respondents there was a brief by *Stern & Lee*, attorneys, and *James F. Stern* of counsel, all of Milwaukee, and oral argument by *James F. Stern*.

HEFFERNAN, J.

"Nor has the world a better thing,
Though one should search it round,
Than thus to live one's own sole king,
Upon one's own sole ground."

Wilfrid Scawen Blunt
"The Old Squire"

It is clear from the record that all of the area, exclusive of the 4.66 acres contained in tract "C," was conveyed to the plaintiff by the deed from the Ozaukee Sand & Gravel Company. The plaintiff takes the position that his rights are exclusive on his "own sole ground," whether this ground is covered with water or not. The defendant admits that the land beneath the surface of lake "A" was conveyed to the plaintiff, but contends that, by virtue of owning to the shore of lake "A," he is a riparian owner and entitled to the beneficial use of the lake. It is conceded that the plaintiff Mayer has been taxed for the whole area, including the lakes, but exclusive of tract "C." Riparian land is land so situated with respect to a body of water that, because of such location, the possessor of the land is entitled to the benefits incident to the use of the water. Burby, Real Property (hornbook series), p. 48, sec. 19. See also 6A American Law of Property, p. 156, sec. 28.55 *et seq.*

Riparian rights are defined in 93 C. J. S., Waters, p. 605, sec. 5, as "a right to the usufruct [the right to enjoy a thing without altering the substance thereof] inherent in the land . . . ."

In Wisconsin riparian rights vary in accordance with the nature of the body of water. With respect to the ownership of the bed of the stream, a riparian owner owns to the thread [the geographical center] of the stream. *Walker v. Shepardson* (1885), 4 Wis. 495 (*486), 507 (*508); *Ne-pee-nauk Club v. Wilson* (1897), 96 Wis. 290, 71 N. W. 661. The title of the riparian owner is, however, a qualified one, subject to the paramount interest of the state. *Muench v. Public Service Comm.* (1952), 261 Wis. 492, 53 N. W. (2d) 514, 55 N. W. (2d) 40; *Ashwaubenon v. Public Service Comm.* (1963), 22 Wis. (2d) 38, 125 N. W. (2d) 647, 126 N. W. (2d) 567. However, the owner of a land abutting a natural lake or pond owns to the waterline only, since title to the submerged lands beneath a permanent body of natural water belongs to the state. An abutting property owner on a natural lake, except for the right of access,

has no more rights as a riparian than any other member of the public. *Ne-pee-nauk Club v. Wilson, supra,* page 294; *Bino v. Hurley* (1956), 273 Wis. 10, 16, 76 N. W. (2d) 571, 1959 Wisconsin Law Review, 341.

The riparian rights of lake-lot owners are sometimes referred to as littoral rights (Black's Law Dictionary). However, most Wisconsin cases make no distinction in applying the terms, "littoral" and "riparian" rights. In general, the bundle of rights conferred upon a property owner by virtue of his contiguity to a body of water, whether a lake or stream, are referred to as riparian rights. It would appear that the interchangeability of these words is philologically justifiable, since both *ripa* and *litus* (the stem words) are defined as referring to either the bank of a lake or of a stream (Cassell's New Latin Dictionary, Funk & Wagnalls, 1960).

Riparian rights include the right to use a body of water "for bathing, swimming, and boating purposes." *Bino v. Hurley* (1956), 273 Wis. 10, 16, 76 N. W. (2d) 571. It is clear in Wisconsin that the mere fact that one owns property abutting a natural body of water presumptively confers certain rights.

It is equally clear that one who acquires land abutting a stream or body of water may acquire no more than is conveyed by his deed. In an old case, *Allen v. Weber* (1891), 80 Wis. 531, 50 N. W. 514, the plaintiff for the purpose of cutting ice purchased a lot adjacent to a mill-pond. His deed described "the west side of Fox river" as the boundary line. The court held that even where the land abuts a flowing stream that there is, at the most, a presumption that ownership of the bank is to also include the bed of the stream. The court stated that the presumption could be rebutted by the clear language of the deed, which made it apparent that the margin of the stream was to be the boundary line.

"When land conveyed is described, not as bounded by a stream, but by or on the 'bank,' 'shore,' 'margin,' 'edge,' etc., of it, the land under the water is usually excluded, and the low water mark is usually adopted as the bound-

ary. The same principle applies to conveyances of land bounded by the margin or shore of a lake." Tiffany, Real Property (abridged ed.), p. 690, sec. 674. See also 4 Tiffany, Real Property (3d ed.), p. 103, sec. 995.

Tiffany cites *Allen v. Weber, supra,* as supporting this proposition.

"There could be no language of description more clearly indicating the exact line than is found in the conveyances of this strip of land: '*To* low-water mark; thence northerly *along* the low-water mark.' This language could have no other meaning than to indicate the intention of the grantors to limit the premises, and establish their boundary at that line '*along low-water mark.*' " *Allen v. Weber* (1891), 80 Wis. 531, 536, 50 N. W. 514.

This language is similar to the language of the deed in the instant case wherein the boundary of lot "C" is described as "along the easterly bank."

*Allen v. Weber, supra,* holds that riparian rights do not necessarily follow as a matter of course the ownership of the adjacent land. In this respect, Wisconsin follows the general rule as set forth in Burby, Real Property (hornbook series), p. 46, sec. 18:

". . . the owner of the upland is presumed to possess riparian rights, . . . Such rights are freely alienable and may be separated from upland ownership. Whether or not riparian rights are conveyed along with the grant of the uplands depends largely upon the intent of the grantor, with particular reference to the language in the deed."

See also *Bright v. Superior* (1916), 163 Wis. 1, 156 N. W. 600.

The presumption in favor of owning a portion of the bed of a stream *(Allen v. Weber, supra)* is not applicable where an artificial lake or body of water is concerned. In *Skalitsky v. Consolidated Badger Co-operative* (1948), 252 Wis. 132, 137, 31 N. W. (2d) 153, the court made that distinction, saying:

"The plaintiffs' lot does not lie on the bank of a stream but on the shore of an artificial pond, and the intent of the plattors that the land of the plaintiffs' lot should not run to the center of the pond plainly appears."

In the instant case, however, it is conceded by the defendant that he has no ownership rights in the bed of the lake itself. This being true, he has no other rights in the waters over the bed of the lake unless he acquired those rights by prescription or adverse possession.

*Haase v. Kingston Co-operative Creamery Asso.* (1933), 212 Wis. 585, 588, 250 N. W. 444, holds that though the public may have acquired the right to use the waters of a millpond, still the title to the land remains in the owner and does not become vested in the state. Additionally, and more important to this instant case, it makes it apparent that the rights to use the waters will only arise from prescription.

"Where the owner of land creates an artificial body of water upon his own premises, he may permit the public to enjoy the ordinary use of such waters, and, it *may* be, that by the lapse of time such enjoyment will ripen into a dedication . . . ." (Emphasis supplied.)

It is elementary that the owner of private property may make any proper use of it so long as he does not interfere with the rights of the public. The use, of course, must be lawful. *Haase v. Kingston Co-operative Creamery Asso., supra.*

A perusal of the cited cases shows that the owner of property on a stream presumptively holds title to the middle of the watercourse. The cases, however, are in accord that the riparian rights and title to the land under the water are severable if the deed makes that limitation clear. In the case of natural lakes and bodies of water, the adjacent landowner owns only to the shoreline; the lake bottom is held in trust for the people of the state. In the case of artificial bodies of water, all of the incidents of ownership are vested in the owner of the land. An artificial lake located wholly on the property of a single owner is his to use as he sees fit, provided, of course, that the use is lawful. He may if he wishes reserve to himself or his assigns the exclusive use of the lake or water rights.

We conclude, therefore, that the defendant by his deed acquired only what was granted by the words of conveyance, property rights up to the water's edge. A review of the facts in this case makes it highly probable that the defendant bought the property from Smith with the full intention of using the adjacent water, but, as this court said in *Allen v. Weber, supra,* page 539:

"But at best such a purpose would not affect the deed, or the natural construction of its language. Deeds would be very inconclusive if they were to be governed by the use the purchaser intended to make of the land."

The defendant, in part, bases his case upon the theory that he has acquired prescriptive rights to use the water.

"Under the prescriptive doctrine, title to water rights may be lost by the owner and acquired by another through long continued adverse use, 'prescriptive' being the word used to describe this uncompensated transfer of rights from owner to wrongful user . . . ." Richard S. Harnsberger, Prescriptive Water Rights in Wisconsin, 1961 Wisconsin Law Review, 47, 48.

The same author points out that the requisites for establishing a right by prescription in Wisconsin include (1) adverse use that is hostile or inconsistent with the exercise of the title holder's rights, (2) visible, open, and notorious action, (3) open claim of right, and (4) continuous and uninterrupted use for the entire period required by the statute of limitations.

The applicable period in Wisconsin is twenty years, the period set by sec. 330.02, Stats., as limiting the time within which an action can be brought for the recovery of real property. *Diana Shooting Club v. Lamoreux* (1902), 114 Wis. 44, 89 N. W. 880; *Tiedeman v. Middleton* (1964), 25 Wis. (2d) 443, 454, 130 N. W. (2d) 783.

It is apparent that the defendant fails to establish the elements necessary for him to prevail. It is arguable that the waters with which we are concerned have existed for twenty years, but the length of time the lake or lakes have existed is irrelevant, since the defendant is not claiming that this is a situation where the plaintiff

flooded his land and will not now be allowed to lower the water level. Rather, he must hinge his argument on the use of the waters, not their mere existence. The first adverse use commenced after Mayer acquired the property in 1952. It appears from the evidence that Smith thereafter used the water for recreational purposes, though he was warned by Mayer not to do so. Grueber, knowing that Mayer was asserting exclusive right to use the lakes, nevertheless persisted in making use of the lakes. There is no doubt that the use made of the lake by Smith and Grueber after the Mayer purchase was adverse, open, and notorious, but unfortunately, from Grueber's point of view, was, at the most, of eleven years' duration—not enough to satisfy the twenty-year period required in this state.

The use by Smith while a tenant of Ozaukee was with the permission of the landlord and was, hence, not adverse but subservient to Ozaukee's title. The same is, of course, true of the permissive use made of the lakes by the employees of Ozaukee. These were uses consented to by the title owner. The reported uses by occasional fishermen and hunters were surreptitious, and rather than uses exercised notoriously, they were exercised with stealth.

The defendant Grueber has acquired no prescriptive rights to use the water.

While it may be surmised that the defendant hoped to make use of the water, yet it is apparent that he was not misled into believing that the owner of the lake bottom was consenting to such use. The defendant was advised by Mrs. Mayer in advance of the purchase that the Mayers asserted the rights to exclusive use of the lakes. There was no conduct by act, language, or silence that might have resulted in misrepresentation (see *Crane v. Esmond* (1934), 214 Wis. 571, 576, 253 N. W. 780). Other than the naked fact that the Gruebers purchased land abutting upon a lake, there was no reason for them to assume that they were also purchasing lake rights or

were entitled to the status of a riparian owner. They were, in fact, expressly warned that the owner of the rest of the property did not accord them such status. While this does not in law bolster the title of Mayer, Grueber cannot in equity claim that Mayer should now be estopped to assert his claim (see 4 Tiffany, Real Property (3d ed.), p. 655, sec. 1235).

We therefore conclude that the purchaser of property abutting an artificial lake acquires no rights as a riparian owner by virtue of the land acquisition alone. Unless the vendor conveys the right to use the lake, the purchaser is precluded from either the right of access or use.

The right to use an artificial lake as well as the right to the bed of the lake are incidents of ownership that are vested exclusively in the owner of the fee upon which the lake is located. If he is to be divested of these rights, it can only be by deed or the eventual acquisition of these rights by prescription or adverse possession. The sale of abutting or contiguous property is a sale of the land alone. In the case before the court, we therefore hold that the plaintiff Mayer could lawfully block the defendant's access to the lake, and the defendant Grueber could assert no rights beyond his property line—the shore of the artificial lake "A."

*By the Court.*—Judgment affirmed.