Jose L. DE NAVA and Cynthia J. Barr,
Petitioners-Appellants,

v.

Wisconsin DEPARTMENT OF NATURAL
RESOURCES, Respondent,

Lindsay L. LENHART and Suzanne L. Lenhart,
Intervenors.

Court of Appeals

*No. 85–0779. Submitted on briefs October 17, 1987.—Decided
May 21, 1987.*

(Also reported in 409 N.W.2d 151.)

For the petitioners-appellants the cause was submitted on the briefs of *Paul A. Croake* and *Peter A. Oppeneer* of *Ross & Stevens, S.C.,* of Madison.

For the respondent the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, and *Robert M. Hunter,* assistant attorney general.

For the intervenors the cause was submitted on the brief of *Peter B. King* of Fontana.

Before Gartzke, P.J., Eich and Sundby, JJ.

GARTZKE, P.J. The principal question is whether the holder of an easement can, by virtue of the rights it grants, be a "riparian owner" under sec. 30.12, Stats. We conclude that the holder cannot. We therefore affirm the circuit court order affirming the order of the Department of Natural Resources (DNR) to the effect that the easement holders, Richard and Deborah Wertz, and their successors, cannot maintain a mooring buoy and boat lift on Lake Geneva.

A ten-foot easement runs from the Wertz lot, which is not on the lake, over the Lindsay and Suzanne L. Lenhart property to the lake. The easement allows the Wertzes to maintain a pier on the lake-edge of the Lenhart property, and the Wertzes claim it allows them to maintain a buoy and boat lift[1] as well. The Lenharts complained to DNR that the

---

[1]The record and DNR's order use the term "shore station." Because the term is misleading, we use "boat lift" to describe the same mechanical device which rests on the lake bed next to the pier and is used to raise a boat out of and lower it into the water and to store it above water.

215

Wertzes were unlawfully maintaining a buoy in front of and a boat lift next to the pier. The legality of the pier is not an issue.

Under secs. 30.12(1)(a) and (2), Stats., only a "riparian owner" may lawfully place and maintain a structure, such as a boat lift or mooring buoy, on the bed of a navigable lake.[2] Following a hearing, the examiner concluded that because their lot is not on the lake, the Wertzes were not "riparian owners," notwithstanding their easement. The examiner found that, as a matter of fact, neither the boat lift nor the buoy obstructed navigation. The examiner concluded, however, that as a matter of law, a structure placed in navigable waters by a person who is not a riparian owner in violation of sec. 30.12(1) is an "unlawful obstruction to navigable waters" under sec. 30.15, Stats. By virtue of sec. 30.15(4), such an obstruction is a public nuisance which may be abated.[3] Section

---

[2]Section 30.12, Stats., provides in part:

(1) Except as provided under sub. (4), unless a permit has been granted by the department pursuant to statute or the legislature has otherwise authorized structures or deposits in navigable waters, it is unlawful:

(a) To deposit any material or to place any structure upon the bed of any navigable water where no bulkhead line has been established; or

(b) To deposit any material or to place any structure upon the bed of any navigable water beyond a lawfully established bulkhead line.

(2) The department, upon application and after notice as provided under s. 31.06 and hearing, may grant to any riparian owner a permit to build or maintain for the owner's use a structure otherwise prohibited by statute, if the structure does not materially obstruct navigation or reduce the effective flood flow capacity of a stream and is not detrimental to the public interest.

[3]Section 30.15, Stats., provides:

30.03(4)(a) authorizes the DNR to order a person who violates the laws regarding navigable waters to refrain from doing so.[4]

For those reasons, the hearing examiner ordered the Wertzes not to place or maintain any structure on the bed of Lake Geneva other than the pier. The order expressly runs with the Wertz property and applies to their heirs, assigns or successors "in the event that the easement is transferred to any other person."[5]

(1) Any person who does any of the following shall forfeit not more than $50 for each offense:

. . . .

(d) Constructs or places any structure or deposits any material in navigable waters in violation of s. 30.12 or 30.13.

. . . .

(4) Every obstruction constructed or maintained in or over any navigable waters of this state in violation of this chapter and every violation of s. 30.12 or 30.13 is declared to be a public nuisance, and the construction thereof may be enjoined and the maintenance thereof may be abated by action at the suit of the state or any citizen thereof.

[4]Section 30.03(4)(a), Stats., provides in part:

Whenever there comes to the attention of the department a possible violation of the statutes relating to navigable waters, or a possible infringement of the public rights therein, and it appears to the department that the public interest may not be adequately served by imposition of penalty or forfeiture, the department may proceed as follows . . . . The department may . . . issue an order directing the parties responsible therefor to perform or refrain from performing such acts as may be necessary to fully protect and effectuate the interests of the public in the navigable waters.

[5]The DNR could have resolved the dispute raised by the complaint on grounds that the buoy and boat lift were unlawful structures since the Wertzes lacked a permit under sec. 30.12, Stats. The department, however, has power to enjoin maintenance of such structures, sec. 30.15, Stats., and thus to resolve the larger question whether the Wertzes as holders of the easement could ever acquire such a permit. To implement its decision that they

The Wertzes timely sought ch. 227, Stats., review in circuit court, which affirmed the order and Wertzes appealed. After the matter was briefed in the court of appeals, the Wertzes sold their property to Jose de Nava and Cynthia Barr, who move that they be substituted for the Wertzes as the appellants.

We first review the contention that we must not only deny the de Nava/Barr motion for substitution but that we must dismiss the appeal. The grounds for this contention are that the DNR order cannot apply to de Nava and Barr, since they have not applied for a permit to maintain the buoy and lift; the Wertzes having sold their property, Lenhart's complaint against them is moot; and de Nava and Barr lack standing to challenge the DNR order. We reject each argument and grant the motion to substitute de Nava and Barr for Wertzes.

The Wertzes relied on the easement for the right to maintain the buoy and boat lift. The easement expressly runs with the Wertz and Lenhart properties. The DNR order expressly applies to the Wertzes' assigns and successors in the event the easement is transferred. Because the order applies to the easement in their hands with the same force as when held by the Wertzes', it is immaterial that de Nava and Barr have not applied for a permit.

A case is moot if its determination can have no practical effect upon an existing controversy. *In*

could not, the Department entered an order running with the Wertzes' land. The controversy before us therefore extends well beyond the grounds on which the department could have decided this matter.

*Matter of G.S.,* 118 Wis. 2d 803, 805, 348 N.W.2d 181, 182 (1984). We reject the view that the original controversy no longer exists. De Nava and Barr acquired the controversy with the Wertz property. They desire its resolution. Our determination can and will provide it.

The standing argument turns on the rule that ch. 227, Stats., judicial review is available to persons "aggrieved" by an agency's decision. Sec. 227.16(1).[6] A "person aggrieved" includes one "whose substantial interests are adversely affected by a determination of an agency." Sec. 227.01(8). The DNR contends that although the interest asserted by de Nava and Barr is recognized by law, the order under review has caused no injury in fact to their interest. DNR rests its argument on the propositions that the order does not bar DNR from future consideration of the terms of the easement and does not impair the new owners' ability to apply for buoy and boat lift permits or restrict their ability to obtain judicial review if their application is denied.

We reject DNR's argument. It is undisputed that DNR's order injured the Wertzes' interests. De Nava and Barr bought those interests. Those interests are substantial, as demonstrated by this litigation. The sale affected neither those interests nor the harm DNR's order caused to them. De Nava and Barr are aggrieved by the DNR's order, are entitled to judicial review of it under sec. 227.16(1), Stats., and have standing in this appeal.

We turn to the merits. The Wertzes and their successors, de Nava and Barr, contend that the

---

[6]All references to ch. 227 are to the 1983–84 statutes.

question is whether the terms of the easement create such rights as make the holder a "riparian owner" within the meaning of sec. 30.12, Stats. Their argument therefore deals with the wording and intent of the easement. They rely upon *Mayer v. Grueber,* 29 Wis. 2d 168, 175, 138 N.W.2d 197, 203 (1965), to support their position that riparian rights are alienable and whether such rights are conveyed depends largely upon the grantor's intent. Agreeing that an easement could transfer sufficient rights to the Wertzes to qualify them as "riparian owners" under sec. 30.12(1), DNR contends that the easement does not grant the right to maintain a mooring buoy or a boat lift. The examiner agreed with DNR's reading of the easement.

After the briefs were filed in this appeal, we decided *Cassidy v. Dept. of Natural Resources,* 132 Wis. 2d 153, 390 N.W.2d 81 (Ct. App. 1986). *Cassidy* suggests and *Colson v. Salzman,* 272 Wis. 397, 75 N.W.2d 421 (1956), confirms, that the hearing examiner reasoned wrongly but correctly concluded that the holders of the easement are not "riparian owners" under sec. 30.12, Stats.

We of course review the examiner's conclusion of law *de novo. Boynton Cab Co. v. ILHR Department,* 96 Wis. 2d 396, 405, 291 N.W.2d 850, 855 (1980). We did not defer to DNR's construction of "riparian owner" in *Cassidy,* 132 Wis. 2d at 157, 390 N.W.2d at 83, and we do not do so here. We may, however, sustain a decision which reaches the right result for the wrong reasons. *See, e.g., State v. Alles,* 106 Wis. 2d 368, 391, 316 N.W.2d 378, 388 (1982) (judgment will be affirmed if decision right even if for wrong reason).

Section 30.12(2), Stats., simply reflects the rule that at common law riparian owners have certain rights incident to their ownership of land adjacent to water. We held in *Cassidy, supra,* that the holder of a mere easement is not a riparian owner within the meaning of sec. 30.12(2), Stats. 132 Wis. 2d at 161, 390 N.W.2d at 85. We reasoned that a riparian owner holds title to the riparian land, but an easement holder has only a right or privilege to use the land and has no title to it. *Id.*

The facts before us differ from those in *Cassidy, supra.* The easement in *Cassidy* involved a ditch and dike rather than the right to install structures in aid of navigation. A riparian owner has a right to build piers, harbors, wharves, booms and similar structures in aid of navigation. *Doemel v. Jantz,* 180 Wis. 225, 231, 193 N.W. 393, 396 (1923). Here the easement purports to include at least the right to erect a pier and, if the Wertzes and their successors properly read it, the right to maintain a mooring buoy and boat lift.

We assume that the easement at issue grants the right to install a mooring buoy and boat lift, that a buoy and lift are aids to navigation, and that the right to install them is therefore a riparian right. We conclude that the holder of an easement which granted those rights is not a riparian owner. We reach that conclusion on the basis of *Colson v. Salzman, supra.*

The *Colson* court invalidated as contrary to law a "finding" that defendants' easements granted them riparian rights. The defendants contended that by virtue of their easements, they possessed riparian rights, including the right to erect a dock. The easements ran from offshore property to a navigable

meandered lake. The *Colson* court said that riparian owners have certain rights based upon title to the bank, that the defendants claimed only an easement, and that an easement grants only the right to use or privilege in the land of another and not title.[7] Since the riparian owner has the exclusive right of access to and from navigable waters to his shore, the riparian owner has exclusive riparian rights.[8] 272 Wis. at 400–01, 75 N.W.2d at 422–23. Because the holder of an easement cannot possess riparian rights, we conclude that the holder cannot be a riparian owner.

This conclusion is consistent with *Mayer v. Grueber,* 29 Wis. 2d 168, 138 N.W.2d 197 (1965). Although the *Mayer* court said that Wisconsin follows the general rule[9] that riparian rights are freely alienable and may be separated from upland ownership, that statement was made in connection with the court's reliance on *Allen v. Weber,* 80 Wis. 531, 50 N.W. 514 (1891). The *Allen* court held that the person who bought land abutting a mill pond did not acquire the right to harvest ice since title to the bed of the pond

---

[7]*Accord, Thompson v. Enz,* 154 N.W.2d 473, 483 (Mich. 1967) (riparian rights are not alienable, severable, divisible or assignable apart from the land which includes or is bounded by a natural water course). *Contra, Mianus Realty Company v. Greenway,* 193 A.2d 713, 715 (Conn. 1963), *Williams v. Skyline Development Corporation,* 288 A.2d 333, 348–51 (Md. 1972), *Farnes v. Lane,* 161 N.W.2d 297, 300 (Minn. 1968).

[8]It is worth noting that the *Colson* court added, however, that the riparian owner could "permit" (presumably by way of a license) the defendants and others to construct a pier, subject to the superior rights of the state. 272 Wis. at 401, 75 N.W.2d at 423.

[9]The *Mayer* court cited W. Burby, *Handbook of the Law of Real Property* (3d ed. 1965) at 46. Burby cites *Mianus Realty Company v. Greenway,* 193 A.2d 713 (Conn. 1963) (see footnote 7, *supra*) but not *Colson v. Salzman, supra.*

had not passed. *Mayer,* 29 Wis. 2d at 174–75, 138 N.W.2d at 203. Like the pond in *Allen,* the lake in *Mayer* was artificial.

The *Mayer* court said, "In the case of natural lakes and bodies of water, the adjacent landowner owns only to the shoreline; the lake bottom is held in trust for the people of the state. In the case of artificial bodies of water, all of the incidents of ownership are vested in the owner of the land. An artificial lake located wholly on the property of a single owner is his to use as he sees fit . . . . He may if he wishes reserve to himself or his assigns the exclusive use of the lake or water rights." 29 Wis. 2d at 176, 138 N.W.2d at 204.

We conclude that the *Mayer* decision has no effect on the holding in *Colson v. Salzman, supra,* that the grantee of an easement acquires no riparian rights in natural waters, even if the easement purports to grant such rights.

Without finding whether Lake Geneva is a natural or artificial lake, the examiner found that it has a surface area of 5262 acres and is navigable in fact. Absent contrary evidence in this record, the presumption is that a lake in this state is natural. *State v. Bleck,* 114 Wis. 2d 454, 462, 338 N.W.2d 492, 496 (1983).

We therefore conclude that the order affirming the DNR's order must be affirmed.[10]

*By the Court.*—Order affirmed.

---

[10]The power of the DNR to enter an order which runs with the Wertz land is not argued.