# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2015AP583 |
| COMPLETE TITLE: | Jerome Movrich and Gail Movrich, Plaintiffs-Respondents, v. David J. Lobermeier and Diane Lobermeier, Defendants-Appellants-Petitioners. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 372 Wis. 2d 724, 889 N.W.2d 454
PDC No: 2016 WI App 90 - Published

| | |
|---|---|
| OPINION FILED: | January 23, 2018 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 20, 2017 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Price |
| JUDGE: | Patrick J. Madden |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| CONCURRED/DISSENTED: | ABRAHAMSON, J. concurs and dissents (opinion filed). R.G. BRADLEY, J. concurs and dissents, joined by A.W. BRALDEY, J. and ABRAHAMSON, J. (except Part II) (opinion filed). |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the defendants-appellants-petitioners, there were briefs filed by *Brian G. Formella* and *Anderson*, *O'Brien*, *Bertz*, *Skrenes & Golla*, *LLP*, Stevens Point. There was an oral argument by *Brian G. Formella*.

For the plaintiffs-respondents, there was a brief and oral argument by *Daniel Snyder*, Park Falls.

An amicus curiae brief was filed on behalf of Big Cedar Lake Protection and Rehabilitation District and Wisconsin

Association of Lakes, Inc. by *William P. O'connor* and *Wheeler, Van Sickle & Anderson, S.C.*, Madison. There was an oral argument by *William P. O'Connor.*

An amicus curiae brief was filed on behalf of Wisconsin REALTORS Association by *Thomas D. Larson* and *Wisconsin REALTORS Association*, Madison.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2015AP583
(L.C. Nos. 2013CV22 & 2013CV78)

STATE OF WISCONSIN    :    IN SUPREME COURT

**Jerome Movrich and Gail Movrich,**

    **Plaintiffs-Respondents,**

    **v.**

**David J. Lobermeier and Diane Lobermeier,**

    **Defendants-Appellants-Petitioners.**

**FILED**

**JAN 23, 2018**

Diane M. Fremgen
Acting Clerk of Supreme
Court

---

REVIEW of a published decision of the court of appeals. *Affirmed in part; reversed in part.*

¶1 PATIENCE DRAKE ROGGENSACK, C.J. David and Diane Lobermeier appeal a decision of the court of appeals, affirming the circuit court's[1] judgment entered in favor of Jerome and Gail Movrich regarding their asserted right to install a pier and to access the Sailor Creek Flowage directly from their shoreline property. Lobermeiers own the waterbed of the Flowage where the Movrich property meets the water.[2] Lobermeiers contend that the presence of navigable water over their property does not affect their basic property rights, including the right to prohibit

---

[1] The Honorable Patrick J. Madden of Price County presided.

[2] Lobermeiers do not own the entire waterbed.

Movriches from installing a pier into or over the portion of the waterbed of the Flowage that Lobermeiers own. Lobermeiers further contend that Movriches may access the Sailor Creek Flowage only from a public access point. Movriches respond that Lobermeiers' ownership is qualified by and subservient to their asserted riparian rights and to the Wisconsin public trust doctrine.

¶2 There are three issues on this appeal. First, we consider whether Movriches have riparian rights, which when combined with their rights under the public trust doctrine, overcome Lobermeiers' private property rights such that Movriches can place a pier on or over Lobermeiers' property. To answer this question we review property rights, riparian rights, and the public trust doctrine, detailing the origin and extent of each.

¶3 In regard to the first issue, we conclude that while Movriches' property borders the Flowage, they are not entitled to those riparian rights that are incidental to property ownership along a naturally occurring body of water wherein the lakebed is held in trust by the state. Rather, any property rights Movriches may enjoy in regard to the man-made body of water created by the flowage easement must be consistent with Lobermeiers' property rights or the flowage easement's creation of a navigable body of water. Because the placement of a pier is inconsistent with Lobermeiers' fee simple property interest and does not arise from the flowage easement that supports only

2

public rights in navigable waters, Movriches' private property rights are not sufficient to place a pier into or over the waterbed of the Flowage without Lobermeiers' permission based on the rights attendant to their shoreline property.

¶4  Second, we consider the nature of the flowage waters, to which all agree the public trust doctrine applies, and whether the public trust doctrine grants Movriches the right to install a pier directly from their property onto or over the portion of the waterbed that is privately owned by Lobermeiers. In answering this inquiry, we consider whether and to what extent the existence of navigable waters over Lobermeiers' privately-owned property affects Lobermeiers' rights.

¶5  On this issue, we conclude that the public trust doctrine conveys no private property rights, regardless of the presence of navigable water.  In a flowage easement such as is at issue here, title to the property under the flowage may remain with the owner.  While the public trust doctrine provides a right to use the flowage waters for recreational purposes, that right is held in trust equally for all.  Furthermore, although the Lobermeiers' property rights are modified to the extent that the public may use the flowage waters for recreational purposes, no private property right to construct a pier arises from the public trust doctrine.

¶6  Third, we consider whether the Wisconsin public trust doctrine when combined with the shoreline location of Movriches' property allows Movriches to access and exit the flowage waters

directly from their abutting property; or, whether, because Lobermeiers hold title to the flowage waterbed, Movriches must access the Flowage from the public access. On this issue, we conclude that as long as Movriches are using the flowage waters for purposes consistent with the public trust doctrine, their own property rights are sufficient to access and exit the Flowage directly from their shoreline property.

¶7 Accordingly, we affirm the court of appeals in part and reverse it in part.

## I. BACKGROUND

¶8 This appeal concerns the tension between asserted riparian rights, ownership of property underlying a flowage, and Wisconsin's public trust doctrine. More specifically, property owners David and Diane Lobermeier appeal from a judgment granting Jerome and Gail Movrich the right to place a pier into and over Lobermeiers' property and to access Sailor Creek Flowage directly from Movriches' abutting property. Movrich v. Lobermeier, 2016 WI App 90, 372 Wis. 2d 724, 889 N.W.2d 454.

¶9 The Sailor Creek Flowage is a 201 acre, man-made lake located near the Town of Fifield in Price County, Wisconsin. It was created by a dam placed on Sailor Creek in 1941. At that time, a Deed of Flowage Rights was executed by Margaret Hussmann, who granted the Town of Fifield "the perpetual rights, privilege and easement to submerge, flood and/or raise the ground water elevation" of the underlying property. Over time, the property that Hussmann subjected to the flowage easement in

4

1941 was transferred to various persons. Some of that property was deeded to brothers David and Robert Lobermeier in 2000, while other property eventually became the Sailor Creek Flowage Subdivision, where Movriches purchased property in 2006.

¶10 Today, Lobermeiers own a portion of the waterbed of the Flowage that is subject to the Hussmann flowage easement. Lobermeiers' portion of the waterbed abuts Movriches' property.[3] David Lobermeier and Gail Movrich are brother and sister. For a number of years the families existed in harmony, each making use of a pier on the Movrich property to moor their boats, and from which they swam and fished. In about 2011 or 2012, however, the families had a falling out, at which point Lobermeiers began to assert that they have exclusive rights to the waterbed at issue. Lobermeiers concede that the Wisconsin public trust doctrine grants Movriches, and all other members of the public, access to the Flowage's waters for navigation and recreation purposes.[4]

¶11 This case originally involved several properties, each of which abutted the Lobermeier waterbed property. David

---

[3] The Movrich property is legally described as Lot One (1) of Sailor Creek Subdivision. A surveyor's description of the Sailor Creek Subdivision provides that the lots run "to the shoreline" of the Flowage and thence "along said shoreline."

[4] The Flowage is navigable, meaning that it is capable of supporting at least light water craft at some time during the year. It is considered a public water pursuant to Wis. Stat. § 30.10 (2013-14). It is undisputed that the public trust doctrine applies to the Flowage.

All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

Lobermeier first brought an action against Robert D. McWilliams, who sought a declaration that Wisconsin's public trust doctrine granted to McWilliams the right to access Lobermeiers' waterbed property from McWilliams' abutting lot, as well as the right to install the pads of his pier directly on the bed of the Flowage, i.e., on the Lobermeier waterbed property.

¶12 Separately, Movriches filed a summons and complaint against Lobermeiers seeking a declaration of their right to install and maintain a pier extending from their land over the Flowage for boating and recreational purposes and their right to enter the Flowage directly from their shoreline property pursuant to their asserted riparian rights and for purposes commonly sanctioned by the public trust doctrine. These cases were consolidated and heard together in Price County circuit court.

¶13 Following a one-day trial, the circuit court granted judgment in favor of Movriches, declaring that they "have the right to enter the waters of the said Sailor Creek Flowage from their said real estate . . . [and] to erect, maintain, and use a dock or pier anchored on their said real estate and extending over the waters of the said Sailor Creek Flowage . . . ." The circuit court enjoined Lobermeiers from coming upon Movriches' property and from interfering or hindering Movriches in the exercise of their rights of ownership. The circuit court limited its analysis to the public trust doctrine, concluding that the doctrine includes the right of an abutting property

owner to place a pier on or over privately-owned land when it is submerged beneath navigable water. The court of appeals affirmed.

¶14 Lobermeiers petitioned for review, challenging the court of appeals' conclusion that the public trust doctrine allows Movriches to access the Flowage directly from their abutting property or to install and maintain a pier over the Flowage, whether supported by posts resting on the Flowage bed or by flotation devices. We granted review and, for the reasons explained below, we now affirm in part and reverse in part.

## II. DISCUSSION

### A. Standard of Review

¶15 The relevant facts are not disputed. Accordingly, we focus on whether prior court decisions properly applied the principles of property law, riparian rights, and the public trust doctrine. These are questions of law that we independently review. Phelps v. Physicians Ins. Co. of Wis., Inc., 2009 WI 74, ¶35, 319 Wis. 2d 1, 768 N.W.2d 615; Linden v. Cascade Stone Co., Inc., 2005 WI 113, ¶5, 283 Wis. 2d 606, 699 N.W.2d 189.

### B. General Principles

¶16 The parties have not presented any case law discussing the interplay between basic property rights, riparian rights, and the public trust doctrine under these or similar facts, i.e., where the bed of a navigable body of water is privately owned, only in part. We address each issue in turn.

## 1. Private Property Rights

¶17 Both the circuit court and the court of appeals analyzed the public trust doctrine and considered the rights of alleged riparian owners without first addressing the various types of common law property rights presented herein. We agree with Lobermeiers that we must begin our analysis by addressing their private property rights and those of Movriches, respectively, because both assert private property interests, those of the waterbed-owning Lobermeiers and those of the shoreline-owning Movriches.

¶18 Lobermeiers own their submerged property in fee simple. "Authorities to prove that a fee-simple estate is the highest tenure known to the law are quite unnecessary, as the principle is elementary and needs no support." Lycoming Fire Ins. Co. of Muncy, Pa. v. Haven, 95 U.S. 242, 245 (1877). An owner in fee simple is presumed to be the "entire, unconditional, and sole owner[] of [any] buildings as well as the land . . . ." Id. This is true regardless of whether the property has positive economic or market value. See Phillips v. Wash. Legal Found., 524 U.S. 156, 170 (1998).

¶19 In Wisconsin, the breadth of rights accompanying a fee simple interest is settled law. See Walgreen Co. v. City of Madison, 2008 WI 80, ¶44, 311 Wis. 2d 158, 752 N.W.2d 687 (describing the fee simple interest as the right to use, possess, enjoy, dispose of, exclude, or the right not to exercise any of these rights); ABKA Ltd. P'ship v. DNR, 2001 WI

8

App 223, ¶28, 247 Wis. 2d 793, 635 N.W.2d 168 ("A fee simple interest means 'an interest in land that, being the broadest interest allowed by law, endures until the current holder dies without heirs . . . .'"). These rights are equally reflected in federal law.[5]

¶20 The significance of property rights is reflected in the law of damages. One who intentionally steps from his or her own property onto the property of another, irrespective of whether he or she thereby causes harm to any legally protected interest of the other, is liable for trespass. Grygiel v. Monches Fish & Game, 2010 WI 93, ¶40, 328 Wis. 2d 436, 787 N.W.2d 6; see also Restatement (Second) of Torts § 158. Wisconsin law acknowledges that actual harm occurs in every trespass. Jacque v. Steenberg Homes, 209 Wis. 2d 605, 619, 563 N.W.2d 154 (1997). Although consent to entry is generally a defense to an action for trespass, consent may later be revoked. Grygiel, 328 Wis. 2d 436, ¶41; Manor Enterprises, Inc. v. Vivid, Inc., 228 Wis. 2d 382, 394, 596 N.W.2d 828 (1999); see also Restatement (Second) of Torts § 160. However, fee simple interests may be subject to certain limitations when an easement

---

[5] See, e.g., Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 435 (1982) ("Property rights in a physical thing have been described as the rights 'to possess, use and dispose of it.'") ("The power to exclude has traditionally been considered one of the most treasured strands in an owner's bundle of property rights.").

is granted. See Borek Cranberry Marsh, Inc. v. Jackson Cty., 2009 WI App 129, ¶¶9-11, 321 Wis. 2d 437, 773 N.W.2d 522.

¶21 These principles of property law are crucial to our analysis. However, despite the consideration of private property rights, the presence of navigable water makes this a more complicated case. We keep this in mind as we address alleged riparian rights and the public trust doctrine.

### 2. Riparian Rights

¶22 Riparian rights may include "special rights to make use of water in a waterway adjoining [an] owner's property." 93 C.J.S. Waters § 9. They are the "bundle of rights" that may be conferred upon a property owner by virtue of his contiguity to a navigable body of water. Mayer v. Grueber, 29 Wis. 2d 168, 174, 138 N.W.2d 197 (1965). Riparian rights are private property rights, subject to and limited to some extent by the public trust doctrine, discussed below. R.W. Docks & Slips v. DNR, 2001 WI 73, ¶18, 244 Wis. 2d 497, 628 N.W.2d 781. We have previously recognized that common law riparian rights may include:

> [t]he right to reasonable use of the waters for domestic, agricultural and recreational purposes; the right to use the shoreline and have access to the waters; the right to any lands formed by accretion or reliction; the right to have water flow to the land without artificial obstruction; the limited right to intrude onto the lakebed to construct devices for protection from erosion; and the right, now conditioned by statute, to construct a pier or similar structure in aid of navigation.

Id., ¶21 (citing Cassidy v. DNR, 132 Wis. 2d 153, 159, 390 N.W.2d 81 (Ct. App. 1986)).

¶23 The extent of riparian rights varies in accordance with the nature of the body of water at issue. Mayer, 29 Wis. 2d at 173. With respect to the owner of riverfront property, a riparian owner may own to the thread of the stream. Id. However, the title of a riparian owner is qualified and subject to the interests of the state. Id. The "owner of land abutting a natural lake or pond owns to the water line only." Id. The lake bottom is held in trust for the people of the state. Id.

¶24 In Wisconsin, there is a presumption that owning property abutting a natural body of water confers certain riparian rights. Id. at 174. However, Wisconsin common law also establishes that riparian rights, including rights to use the land beneath a body of water, are severable from basic property rights if the deed in question makes that severability clear. "[O]ne who acquires land abutting a stream or body of water may acquire no more than is conveyed by his deed." Id. In the case of a man-made body of water located wholly on the property of a single owner, there is no presumption in favor of riparian rights. Id. at 176.[6] Rather, "all of the incidents of

---

[6] In Mayer v. Grueber, explained in further detail below, plaintiff Mayer sought an injunction to prevent Grueber from trespassing onto the waters of a man-made lake, the bed of which was entirely owned by Mayer. Mayer v. Grueber, 29 Wis. 2d 168, 170, 138 N.W.2d 197 (1965). Grueber counter-claimed, insisting that as a "riparian owner" he was entitled to the beneficial use
(continued)

11

ownership are vested in the owner of the land" to convey as he or she expresses in conveyances.  Id.

### 3.  Public Trust Doctrine

¶25 Under the public trust doctrine, as a general rule, the State of Wisconsin "holds the beds underlying navigable waters in trust for all of its citizens."  Muench v. Public Serv. Comm'n, 261 Wis. 492, 501, 53 N.W.2d 514.  However, a riparian owner on the bank of a navigable stream may have a qualified title in the stream bed to its center.  Id. at 502.  The public rights protected under the public trust doctrine include boating, swimming, fishing, hunting and preserving scenic beauty.  Rock-Koshkonong Lake Dist. v. DNR, 2013 WI 74, ¶72, 350 Wis. 2d 45, 833 N.W.2d 800.

¶26 The doctrine can be traced back to the Northwest Ordinance of 1787, which set up the machinery for the government of the Northwest Territory after the Revolutionary War. Wisconsin Const. art. IX, § 1, adopted by the Territorial Convention on February 17, 1848, adopted verbatim the words of the Northwest Ordinance with respect to navigable waters:

> The state shall have concurrent jurisdiction on all rivers and lakes bordering on this state so far as such rivers or lakes shall form a common boundary to the state and any other state or territory now or hereafter to be formed, and bounded by the same; and the river Mississippi and the navigable waters leading into the Mississippi and St. Lawrence, and the carrying places between the same, shall be common highways and forever free, as well to the inhabitants

and enjoyment of the lake.  Id.

of the state as to the citizens of the United States, without any tax, impost or duty therefor.

Muench, 261 Wis. 492 at 499-500.

¶27 Although the doctrine was originally intended to apply only to water that was navigable per se, "[t]his court has long held that the public trust in navigable waters 'should be interpreted in the broad and beneficent spirit that gave rise to it in order that the people may fully enjoy the intended benefits.'" Rock-Koshkonong Lake Dist., 350 Wis. 2d 45, ¶72, (citing Diana Shooting Club v. Husting, 156 Wis. 261, 271, 145 N.W. 816 (1914)). "Broadly interpreting the public trust has resulted in recognition of more than just commercial navigability rights. Protection now extends to 'purely recreational purposes such as boating, swimming, fishing, hunting, . . . and . . . preserv[ing] scenic beauty.'" Id. The doctrine traditionally applies to all areas within the ordinary high water mark of the body of water in question. R.W. Docks & Slips, 244 Wis. 2d 497, ¶19.

¶28 The public trust doctrine does not convey private property rights. Rather, for at least a century, we have recognized the public trust doctrine as a limit on riparian rights. Wisconsin common law has established that the right to place structures for access to navigable water is "qualified, subordinate, and subject to the paramount interest of the state and the paramount rights of the public in navigable waters." Id., ¶22. This is true even where the bed is privately held, as long as the body of water is public, navigable and created by

13

use of public waters.  See Klingeisen v. DNR, 163 Wis. 2d 921, 927-28, 472 N.W.2d 603 (Ct. App. 1991).

¶29  The legislature, as trustee, is empowered to adopt regulations to protect public rights established under the public trust doctrine.  See Ashwaubenon v. Public Serv. Comm'n, 22 Wis. 2d 38, 125 N.W.2d 647 (1963); State v. Bleck, 114 Wis. 2d 454, 465, 338 N.W.2d 492 (1983).  Under this authority, the legislature has enacted provisions regulating the placement of any structure on the bed of navigable waters, unless placed under permit or other legislative authority.  See Wis. Stat. §§ 30.12-30.13.  However, where a waterbed is privately held, the state has no authority to compel private property owners to accept pier placement.  See Mayer, 29 Wis. 2d at 170.

### C.  Application

#### 1.  Common Law Property Rights

¶30  The circuit court and court of appeals conducted their analyses based on the assumption that the public trust doctrine controls the outcome of this case.  However, as noted above, neither the public trust doctrine nor riparian rights principles addresses private property interests between abutting property owners.  The presence of navigable water does not cancel private property rights, although it may modify those rights.

¶31 We begin by examining the ownership interests of Lobermeiers and Movriches, respectively.  Lobermeiers own a portion of the waterbed of the Flowage, purchased June 19, 2000. At the time of purchase, David Lobermeier and his brother,

Robert, were warrantied that there were no easements, encroachments, walkways, or driveways affecting the property, except those listed in the commitment, and that no claims of easements, encroachments, walkways, or driveways had been made during the previous owner's ownership. Movriches own Lot One (1) of the Sailor Creek Subdivision. The boundary between Movriches' property and Lobermeiers' property is the shoreline of the Flowage, as described in the surveyor's certificate admitted at trial.

¶32 In support of Lobermeiers' argument that they may prohibit an abutting lot owner from placing a pier on or over the Flowage, or from accessing the Flowage directly from their abutting property, Lobermeiers cite to numerous state and federal cases that lay the foundation of common law private property rights.[7] Movriches contend that these cases are

---

[7] Loretto, 458 U.S. at 434 ("The power to exclude has traditionally been considered one of the most treasured strands in an owner's bundle of property rights."); Lycoming Fire Ins. Co. of Muncy, Pa. v. Haven, 95 U.S. 242, 245 (1877) (concluding that landowners under a fee simple title are presumed to be the "entire, unconditional, and sole owners of the buildings as well as the land . . . ."); Walgreen Co. v. City of Madison, 2008 WI 80, ¶44, 311 Wis. 2d 158, 752 N.W.2d 687 (concluding that fee simple rights include the right of exclusion); Christensen v. Mann, 187 Wis. 567, 581, 204 N.W. 499 (1925) ("[P]roperty rights extend upwards from the surface to an unlimited extent . . . ."); Burnham v. Merch. Exch. Bank, 92 Wis. 277, 280, 66 N.W. 510 (1896) (holding that courts must protect the right of the owner to his property); Brownell v. Durkee, 79 Wis. 658, 663, 48 N.W. 241 (1891) (concluding that property rights should be "protected and secured as far as possible."); ABKA Ltd. P'ship v. DNR, 2001 WI App 223, ¶28, 247 Wis. 2d 793, 635 N.W.2d 168 (concluding that an interest in fee simple is the broadest interest allowed by law).

15

inapposite. While it is true that none of them addresses shoreline property on a flowage, they all are relevant in addressing principles of property law, which, as we have acknowledged, must be considered.

¶33 Under both Wisconsin and federal law, a fee simple estate is "the highest tenure known to the law." Lycoming Fire Ins. Co. of Muncy, Pa., 95 U.S. at 245. Among other rights, an owner in fee simple enjoys a basic right to exclude. It is undisputed that were this contest between two upland property owners, any encroachment by one onto the property of the other would be trespass. Jacque, 209 Wis. 2d at 617-18. Lobermeiers' property interests are subject to certain protections, as are the public's interests in navigable water. See Muench, 261 Wis. at 501-02. Therefore, unless riparian rights or the public trust doctrine modify those rights, Movriches may not interfere with the property rights of Lobermeiers. We therefore turn to whether Movriches are riparian owners and what effect the public trust doctrine has on Movriches' and Lobermeiers' respective rights.

## 2. Riparian Rights

¶34 The Movriches allege that by virtue of owning "to the shoreline" of the Flowage, they are riparian owners and therefore entitled to all of the "amenities of waterfront property," including the right to install and maintain a pier extending from their property over the waters of the Flowage.

16

¶35 As we set forth in Mayer v. Grueber, riparian rights vary depending on the body of water at issue.

> A perusal of the cited cases shows that the owner of property on a stream presumptively holds title to the middle of the watercourse. The cases, however, are in accord that the riparian rights and title to the land under the water are severable if the deed makes that limitation clear. In the case of natural lakes and bodies of water, the adjacent landowner owns only to the shore line; the lake bottom is held in trust for the people of the state. In the case of artificial bodies of water, all of the incidents of ownership are vested in the owner of the land. An artificial lake located wholly on the property of a single owner is his to use as he sees fit, provided, of course, that the use is lawful. He may if he wishes reserve to himself or his assigns the exclusive use of the lake or water rights.

Mayer, 29 Wis. 2d at 176.

¶36 It is not disputed that the Flowage was created by the damming of Sailor Creek, a navigable public body of water, or that the Flowage is subject to the public trust doctrine. What is unclear, however, is whether, simply by virtue of their property abutting the Flowage, Movriches are entitled to the full "bundle of [riparian] rights" when the portion of the waterbed of the Flowage adjacent to their property is privately held. Id. at 174.

¶37 In Mayer, we considered whether defendant, Grueber, who owned property to the shoreline of an artificial lake, the bed of which was entirely owned by Mayer, was entitled to riparian rights despite the language of his deed. We concluded that he was not. First, the deed in question described the boundary of Grueber's property as "along the easterly bank."

17

Id. at 175. We concluded that "riparian rights and title to the land under the water are severable if the deed makes that limitation clear." Id. at 176. Second, Grueber was specifically told that ownership of the tract would not entitle him or his wife to use of the lake. Id. at 172. After the Gruebers purchased the land and commenced using the lake for recreational purposes, they were accused of trespass by the Mayers and ordered off the lake. Id. at 172-73.

¶38 Movriches argue that Mayer should be limited to situations where the entire lakebed is privately owned, and that their riparian rights arise out of ownership of shoreline property without regard to the ownership of the waterbed. Lobermeiers, however, argue the court of appeals failed to express or articulate why owning the entire portion of a waterbed matters. Instead, they assert that their private property rights are no less important than Movriches' alleged riparian rights, and that the public trust doctrine cannot be used as a basis for allowing an abutting property owner to install a pier onto or over the Flowage, or to allow Movriches to access Lobermeiers' property directly from their abutting lot. Both parties have overstated their cases.

¶39 While we agree that the facts in Mayer differ from those presented herein, that difference is insufficient to extinguish Lobermeiers' fee simple interest in the waterbed that abuts Movriches' shoreline property. As we have explained, the

public trust doctrine does not convey private property rights.[8] Rather, it establishes rights of use of navigable waters that are held in trust for all members of the public.

### 3.  Extent of Movriches' Rights

¶40  Movriches claim that because their property borders on the shoreline of the Flowage they have riparian rights incidental to property ownership that borders a naturally occurring body of water, such as installing and maintaining a pier for ordinary boating and recreational purposes.

¶41  First, they argue that the property law cited by Lobermeiers is inapposite and does not stand for the proposition that the owner of a flowage waterbed has the right to exclude access for pier placement.  As explained above, we disagree, because underlying legal principles applicable to adjacent property owners are not extinguished and must be considered.  On the contrary, the authorities cited by Movriches——namely, <u>Rock-Koshkonong Lake Dist. v. DNR</u>, <u>Muench v. Public Serv. Comm'n</u>, <u>Doemel v. Jantz</u>, and <u>Diana Shooting Club v. Husting</u>——do not support the proposition that Lobermeiers' fee simple title is overridden by Movriches alleged riparian rights.

---

[8] As discussed above, the public trust doctrine has been "expansively interpreted to safeguard the public's use of navigable waters for purely recreational purposes such as boating, swimming, fishing, hunting, recreation, and to preserve scenic beauty." <u>R.W. Docks & Slips v. State of Wis.</u>, 2001 WI 73, ¶19, 244 Wis. 2d 497, 628 N.W.2d 781 (2001).

¶42 In Doemel v. Jantz, we addressed whether a member of the public has a lawful right to enter and travel upon that portion of Lake Winnebago between the ordinary high and low water marks. In answering this question, we defined the scope of riparian rights and quoted, with approval, the following statement of law:

> Those [riparian] rights are not common to the citizens at large, but exist as incidents to the right of soil itself contiguous to and attingent on the water. In such ownership [of the shoreland], they have their origin, and not out of the ownership of the bed, and they are the same whether the riparian owner owns the soil under the water or not.

Doemel, 180 Wis. at 231.

¶43 Movriches read this statement to mean that by virtue of owning to the shoreline of the Flowage, they are entitled to the full range of riparian rights.[9] However, in Doemel we addressed an entirely different type of water, both in its nature and in ownership. Unlike the Flowage, Lake Winnebago is a naturally occurring lake. Although its water levels were artificially raised in 1850 and 1930, it is not man-made and, as far as we can tell, no portion of Lake Winnebago's waterbed is privately owned. Therefore, because there was no conflict between shoreline property and a privately-owned waterbed,

---

[9] Specifically, in Doemel we held that "[t]he riparian owner also has the right to build piers, harbors, wharves, booms, and similar structures . . . incident to the ownership of the upland." Doemel v. Jantz, 180 Wis. 225, 231, 193 N.W. 393 (1923).

20

Doemel is not dispositive. Rather, we read Doemel as addressing the range of riparian rights appurtenant to property ownership on natural, public, navigable lakes.

¶44 In Diana Shooting Club, we considered whether the right to hunt and fish on navigable waters is limited where the title to the land covered by the waters is privately held. We concluded that the public trust doctrine "should be interpreted in the broad and beneficent spirit that gave rise to it in order that the people may fully enjoy the intended benefits." Diana Shooting Club, 156 Wis. at 271. In so holding, we explained that riparian owners, although they may hold qualified title to the thread of a stream or river, may not interfere with public navigation or other rights incident to the public trust doctrine. This remains good law. However, while Diana Shooting Club spoke specifically to the Rock River, in the case at hand we are tasked with determining what rights the owners of land on which a man-made flowage now rests may assert against owners whose property ends at the shoreline. Diana Shooting Club is not helpful in deciding that question.

¶45 For similar reasons, we conclude that Movriches' reliance on Rock-Koshkonong and Muench is misplaced. In Rock-Koshkonong, we were tasked with determining, among other issues, whether the Wisconsin Department of Natural Resources (DNR) properly relied on the public trust doctrine for its authority to protect non-navigable land and non-navigable water above the ordinary high water mark. Rock-Koshkonong, 350 Wis. 2d 45, ¶11.

21

We concluded that, in attempting to extend its public trust jurisdiction beyond navigable waters to non-navigable waters and land, the DNR moved beyond the language of the Constitution. Id., ¶77.

¶46 Movriches cite to paragraph 78 of Rock-Koshkonong, in which we wrote that riparian ownership runs to the center or thread of a stream as a "qualified title in the stream beds." Id., ¶78. However, the Movrich property does not border a stream; it borders a 201 acre flowage. Paragraph 78 provides no support for Movriches' assertion that they have the right to build a pier upon the Lobermeiers' property; it deals solely with the rights of the public under the public trust doctrine.

¶47 Some may read Minehan v. Murphy, 149 Wis. 14, 134 N.W. 1130 (1912), as giving assistance to Movriches. However, Minehan was an action in ejectment from the waterbed of navigable waters. Id. at 14. There, Minehan's title described her western boundary as "the center line of the creek." Id. at 14-15. She sought to eject Murphy from encroaching on her side of the creek's center line. Id. at 15. The question on which the case turned was whether the navigable water that bordered Minehan's land was a lake or a river. Id. at 16. If it was a river, she had rights to the center line; if it was a lake, she did not. The navigable water was determined to be a river, and Minehan won. Id. at 17. However, Minehan has nothing to do with whether Movrich has the right to place a pier on Lobermeiers' property.

22

¶48 Haase v. Kingston Co-operative Creamery Ass'n, 212 Wis. 585, 250 N.W. 444 (1933), sets aside any misinterpretation of Minehan that would support a taking of private property rights due to a flowage upon private lands. Id. at 588. Haase was an action to recover for ice taken by Kingston from a flowage over lands Haase owned in fee. Id. at 586. Kingston claimed that due to the navigable waters over Haase's land for an extended time, title to the waterbed had passed to the state and, therefore, harvesting ice was part of the public's use of navigable waters. Id. We disagreed with Kingston's contention, and concluded that "title to the ice formed on this pond was in the plaintiff as the owner of the land beneath the same, and he is entitled to recover the value of the ice taken by the defendant." Id. at 589.

¶49 Finally, in Muench we traced the evolution of the public trust doctrine to determine whether the Public Service Commission was required to make findings as to whether a proposed dam would violate the doctrine. Again, we stated that private title to the waterbed underlying navigable waters is qualified and subject to the public's right to use and enjoy the water. Muench, 261 Wis. at 504-05. In other words, the owner of a waterbed may not use his or her property in such a way as to interfere with public rights. What we did not say was that the owner of a waterbed may not exercise his or her property rights in a way that interferes with another property owner's assertion of riparian rights.

23

¶50 In short, Movriches argue that these cases (and others) establish their right as riparian owners, and, independently, under the public trust doctrine, to install and maintain a pier anchored on their property and extending over or into the Lobermeiers' property. This reasoning completely ignores the property rights of Lobermeiers, including their right to exclude. As the United States Supreme Court has written:

> [A]n owner suffers a special kind of injury when a stranger directly invades and occupies the owner's property . . . . [P]roperty law has long protected an owner's expectation that he will be relatively undisturbed at least in the possession of his property. To require, as well, that the owner permit another to exercise complete dominion literally adds insult to injury.

Loretto, 458 U.S. at 436-37.

¶51 Furthermore, both state and federal jurisprudence conclude that the common law property right to exclude applies both above and below a property's physical surface. See Loretto, 458 U.S. at 436 n.13 ("[A]n owner is entitled to the absolute and undisturbed possession of every part of the premises, including the space above, as much as a mine beneath."); Christensen v. Mann, 187 Wis. at 581 ("As property rights extend upwards from the surface to an unlimited extent, they also extend downwards into the soil, . . . ."). Moreover, we have consistently held that "due regard should be had to the rights which the owner has to his property, and that these

24

rights should be protected and secured as far as possible." Brownell, 79 Wis. at 663.

¶52 Movriches also argue that they had the expectation that their property would include riparian rights, specifically the right to install a pier. First, they argue their property was marketed and sold as a "waterfront lot," and that at the time of purchase many of the properties on the Flowage maintained "open and obvious" piers. Second, they claim they purchased this lot specifically because it was a shoreline property, and for a period of years thereafter they made use of the Flowage by fishing, using a pier to moor their boat, swimming, and kayaking. These arguments may have had arguable merit if Movriches had purchased their property from Lobermeiers or if they had obtained an easement or license from Lobermeiers. However, neither of these events occurred. Furthermore, their arguments ignore Mayer's clear directive that "one who acquires land abutting a stream or body of water may acquire no more than is conveyed by his deed." Mayer, 29 Wis. 2d at 174.

¶53 The original conveyance given by Margaret Hussman to the Town of Fifield on September 13, 1941, did not convey any ownership interest in her land. Rather, it conveyed a type of easement to permit water to flow on her land. Borek Cranberry Marsh, 321 Wis. 2d 437, ¶¶9-11.

¶54 When Movriches took title to their land, the legal description on their deed made no reference to riparian rights. Meanwhile, the surveyor's certificate clearly indicated that

25

their property extended only "to the shoreline" of the Flowage. Although they claim they purchased the lot with the intention of maintaining a pier, they did not purchase their lot from Lobermeiers, and their deed describes no legal right, title, or interest in the flowage waterbed.

¶55 We conclude that, as to the pier issue, Movriches have failed to establish that they are entitled to those riparian rights that are incidental to property ownership along a naturally occurring body of water where the lakebed is held in trust by the state or that the public trust doctrine creates an exception to Lobermeiers' property rights in the waterbed that is sufficient for placement of Movriches' pier on Lobermeiers' property. Therefore, Lobermeiers may prevent Movriches from installing a pier onto or over Lobermeiers' property without their permission.

### 4. Movriches as Members of the Public

¶56 Were these properties both upland, Movriches would be unable to step from their property onto Lobermeiers' property without trespassing. Jacque, 209 Wis. 2d at 617-18. Here, however, Lobermeiers' property is submerged beneath a public flowage that is indisputably subject to the public trust doctrine. This qualifies Lobermeiers' rights in regard to public use. Therefore, we agree that Movriches, as members of the public, are entitled to access and exit from the Flowage by way of their own shoreline property for purposes consistent with the public trust doctrine, e.g. swimming, fishing, and boating.

26

¶57 Lobermeiers ask us to conclude that this case is analogous to Mayer, where we held that because defendant Grueber had no ownership rights in the bed of the lake at issue, "he ha[d] no other rights in the waters over the bed of the lake unless he acquired those rights by prescription or adverse possession." Mayer, 29 Wis. 2d at 176. However, Mayer is distinguishable because the public trust doctrine did not apply in Mayer. Accordingly, we conclude that where the public trust doctrine applies to the body of water, an abutting property owner's rights are sufficient to access and exit the water. However, while Movriches may access and exit the Flowage from their own property for recreation purposes, Lobermeiers may not access or exit the Flowage except through the public access or with the permission of an owner of property bordering the Flowage.

### III. CONCLUSION

¶58 There are three issues presented in this review. First, we conclude that while Movriches' property borders the Flowage, they are not entitled to those riparian rights that are incidental to property ownership along a naturally occurring body of water where the lakebed is held in trust by the state. Rather, any rights Movriches may enjoy in regard to the man-made body of water created by the flowage easement must be consistent with Lobermeiers' property rights or the flowage easement's creation of a navigable body of water. Because the placement of a pier is inconsistent with Lobermeiers' fee simple interest and

27

does not arise from the flowage easement that supports only public rights in navigable waters, Movriches' private property rights are not sufficient to place a pier into or over the waterbed of the Flowage without Lobermeiers' permission based on the rights attendant to their shoreline property.

¶59 Second, we consider the nature of the Flowage waters, to which all agree the public trust doctrine applies, and whether the public trust doctrine grants Movriches the right to install a pier directly from their property onto or over the portion of the Flowage whose waterbed is privately owned by Lobermeiers. In answering this inquiry, we consider whether and to what extent the existence of navigable waters over Lobermeiers' privately-owned property affects Lobermeiers' rights.

¶60 On this issue, we conclude that the public trust doctrine conveys no private property rights, regardless of the presence of navigable water. In a flowage easement such as is at issue here, title to the property under the flowage may remain with the owner. While the public trust doctrine provides a right to use the flowage waters for recreational purposes, that right is held in trust equally for all. Furthermore, although the Lobermeiers' property rights are modified to the extent that the public may use the flowage waters for recreational purposes, no private property right to construct a pier arises from the public trust doctrine.

28

¶61 Third, we consider whether the public trust doctrine, when combined with the shoreline location of Movriches' property, allows Movriches to access and exit the flowage waters directly from their abutting property; or, whether, because Lobermeiers hold title to the flowage waterbed, Movriches must access the Flowage from the public access. On this issue, we conclude that as long as Movriches are using the flowage waters for purposes consistent with the public trust doctrine, their own property rights are sufficient to access and exit the Flowage directly from their shoreline property.

¶62 Accordingly, we affirm the court of appeals in part and reverse it in part.

*By the Court.*—The decision of the court of appeals is affirmed in part; reversed in part.

¶63 SHIRLEY S. ABRAHAMSON, J. *(concurring in part, dissenting in part).* I join Justice Rebecca G. Bradley's separate writing except for Part II.

¶64 REBECCA GRASSL BRADLEY, J. *(concurring in part; dissenting in part).* Riparian rights in Wisconsin are sacred.[1] For many, waterfront property in Wisconsin provides more than merely a place to live——it affords a lifestyle. The proverbial cottage "up north" offers the opportunity for fishing off the pier in the morning, waterskiing with children or grandchildren in the afternoon, and an early evening ride on the pontoon boat with friends and neighbors. None of this is possible absent riparian rights. Traditionally, these rights have included "the right to build piers, harbors, wharves, booms, and similar structures, in aid of navigation, and such right is also one which is incident to the ownership of the upland." Doemel v. Jantz, 180 Wis. 225, 231, 193 N.W. 393 (1923). The majority opinion sweeps away these cherished and longstanding property rights and extinguishes riparian rights for those with cottages or homes on Wisconsin's waters called flowages.

---

[1] "Riparian" is defined as "relating to or living or located on the bank of watercourse (as a river or stream) or sometimes a lake." Webster's Third New International Dictionary of the English Language 1960 (3d ed. 1986). "Sacred" as used in this context, as in other riparian rights cases, is used to describe something secured against violation or infringement rather than in the religious sense. See, e.g., Chapman v. Oshkosh & M.R.R. Co., 33 Wis. 629, 637 (1873) ("And he holds every one of these [riparian] rights by as sacred a tenure as he holds the land from which they emanate."); Avery v. Fox, 2 F. Cas. 245, 247 (C.C.W.D. Mich. 1868) ("This right of private persons to the use of water as it flows by or through their lands, in any manner not inconsistent with the public easement, is as sacred as is the right of a person to his land, his house, or his personal property.").

1

¶65 The issues before this court are (1) whether Jerome and Gail Movrich may maintain a pier resting over David and Diane Lobermeiers' flowage bed property either as part of their riparian rights or under the public trust doctrine, and (2) whether the Movriches have the right to cross the Lobermeiers' flowage bed from their own property to use and enjoy the flowage waters for recreational purposes. As to the first issue, the majority reverses the court of appeals, concluding the Lobermeiers own the flowage bed in fee simple absolute, entitling them to exclude the Movriches from erecting a pier. As to the second issue, the majority affirms the court of appeals and holds that the Movriches nevertheless have the right to access and enjoy the flowage bed from their property pursuant to the public trust doctrine.

¶66 I agree with the majority's conclusion that the Movriches may access the flowage from their property; I too would affirm the court of appeals on this issue.[2] I disagree, however, with the majority's conclusion that the Movriches are prohibited from erecting a pier. In defining the Lobermeiers' property rights in terms of fee absolute ownership, the majority ignores the most salient fact of this case: the presence of navigable water over the Lobermeiers' property. The presence of navigable water for over three quarters of a century alters the

---

[2] See also deNava v. DNR, 140 Wis. 2d 213, 222, 409 N.W.2d 151 (Ct. App. 1987) ("Since the riparian owner has the exclusive right of access to and from navigable waters to his shore, the riparian owner has exclusive riparian rights.").

2

Lobermeiers' property rights in the waterbed, subordinating them to the riparian rights of the Movriches and the rights of the public under the public trust doctrine. Accordingly, I would affirm the court of appeals on this issue, although I would clarify that riparian rights are independent private property rights, which are not conferred under the public trust doctrine.

¶67 The majority opinion overlooks the interplay between private property rights, riparian rights and the public trust doctrine. Although separate and distinct, these competing rights intertwine and the majority opinion errs in its rigid approach toward applying them to the Movriches' and the Lobermeiers' property interests. The majority adopts an unprecedented holding that a fee simple interest in land submerged by water cancels riparian rights presumptively recognized under the common law for at least 140 years. The consequences of what began as a family squabble are not confined to the parties before us but fundamentally transform property rights for thousands of Wisconsin property owners along hundreds of flowages.[3] Such a dramatic change in the law should be the legislature's prerogative, not that of the four justices comprising the majority.

¶68 Ultimately, I conclude the Lobermeiers' title to a portion of the waterbed beneath the Sailor Creek Flowage is qualified by the existence of navigable water; the Movriches are entitled to erect and maintain a pier as part of the bundle of

---

[3] See generally Wis. Dep't of Nat. Res., Wisconsin Lakes (2009), http://dnr.wi.gov/lakes/lakebook/wilakes2009bma.pdf.

rights they enjoy as riparian owners; and the public trust doctrine confers rights on the public to use the flowage. Accordingly, I respectfully concur in part and dissent in part.

I

¶69 From its beginnings, Wisconsin prioritized public access to the watercourses across the state. This preference is richly embodied in the public trust doctrine, which finds roots in the Northwest Ordinance and materialized upon statehood through the adoption of Article IX, Section 1 of the Wisconsin Constitution.[4] Under the public trust doctrine, the state holds the waters and beds of navigable lakes in trust for all of its

---

[4] "The United States [S]upreme [C]ourt in Barney v. Keokuk (1876), 94 U.S. 324 . . . declared that the individual states have the right to determine for themselves the ownership of land under navigable waters." Rock-Koshkonong Lake Dist. v. DNR, 2013 WI 74, ¶79, 350 Wis. 2d 45, 833 N.W.2d 800 (quoting Muench v. Pub. Serv. Comm'n, 261 Wis. 501, 501, 53 N.W.2d 514, adhered to on reh'g, 261 Wis. 492, 55 N.W.2d 40 (1952)). Article IX, Section 1 states: "The state shall have concurrent jurisdiction on all rivers and lakes bordering on this state so far as such rivers or lakes shall form a common boundary to the state and any other state or territory now or hereafter to be formed, and bounded by the same; and the river Mississippi and the navigable waters leading into the Mississippi and St. Lawrence, and the carrying places between the same, shall be common highways and forever free, as well to the inhabitants of the state as to the citizens of the United States, without any tax, impost or duty therefor."

citizens.[5] Conversely, the public trust doctrine has been interpreted to "give[] riparian owners along navigable streams a qualified title in the stream beds to the center of the stream, while the state holds the navigable waters in trust for the public. In reality, the state effectively controls the land under navigable streams and rivers without actually owning it."[6] Rock-Koshkonong Lake Dist. v. DNR, 2013 WI 74, ¶78, 350 Wis. 2d 45, 833 N.W.2d 800. "The rule is different with respect to the beds under streams[ ] in part because streams can change course, streams can become unnavigable over time, and navigable streams can be very narrow and shallow, so that state ownership of stream beds could be problematic and impractical." Id., ¶82 (footnote omitted).

---

[5] The doctrine was "originally designed to protect commercial navigation," but its applicability has since "been expanded to safeguard the public's use of navigable waters for purely recreational and nonpecuniary purposes." State v. Bleck, 114 Wis. 2d 454, 465, 338 N.W.2d 492 (1983) (citing Muench, 261 Wis. 492); see also Diedrich v. N. W. U. Ry. Co., 42 Wis. 248 (1877); Illinois Steel Co. v. Bilot, 109 Wis. 418, 425, 84 N.W. 855 (1901); Joseph D. Kearney & Thomas Merrill, The Origins of the American Public Trust Doctrine: What Really Happened in Illinois Central, 71 Univ. Chic. L. Rev. 799 (2004). "The legislature has the primary authority to administer the public trust for the protection of the public's rights, and to effectuate the purposes of the trust." Hilton ex rel. Pages Homeowners' Ass'n v. DNR, 2006 WI 84, ¶19, 293 Wis. 2d 1, 717 N.W.2d 166 (citing Bleck, 114 Wis. at 465).

[6] "It is said that the controlling distinction between a stream and a lake or pond is that in the one case the water has a natural motion,——a current,——while in the other the water is, in its natural state, substantially at rest, and this entirely irrespective of the size of the one or the other." Ne-Pee-Nauk Club v. Wilson, 96 Wis. 290, 295, 71 N.W. 661 (1897) (citation omitted).

5

¶70 The public trust doctrine applies to lakes and streams that are "navigable in fact for any purpose." Wis. Stat. § 30.10 (providing that lakes and streams, if navigable in fact, are public waterways); see State v. Bleck, 114 Wis. 2d 454, 459-60, 338 N.W.2d 492 (1983). In the absence of a legislative declaration applying specifically to a certain type of watercourse, "navigability is a question of fact." Klingeisen v. DNR, 163 Wis. 2d 921, 931, 472 N.W.2d 603 (Ct. App. 1991) (citing Angelo v. Railroad Comm'n, 194 Wis. 543, 552, 217 N.W. 570 (1928)) (holding that "[t]he public trust doctrine, to be effective, must also extend to public, artificial waters that are directly and inseparably connected with natural, navigable waters"). A finding of navigability in fact is a fairly low bar to meet and thousands of waterways in Wisconsin are considered navigable. Here, it is not disputed that the Sailor Creek Flowage is navigable. Majority op., ¶10, n.4.

¶71 If a body of water is navigable in fact, then its use is subject to the public trust doctrine, which permits all people to use the waters in aid of navigation and for hunting, fishing, and other recreational purposes. Diedrich v. Nw. Union Ry. Co., 42 Wis. 248, 264 (1877); Illinois Steel Co. v. Bilot, 109 Wis. 418, 425, 84 N.W. 855 (1901); Diana Shooting Club v. Husting, 156 Wis. 261, 271-73, 145 N.W. 816 (1914). If a body of water is not navigable, "the public has no easement; and the riparian owner may, in general, put his estate under the water to any proper use he may please, not infringing upon the rights

6

of other riparian owners, and not violating any public law." Diedrich, 42 Wis. at 264.

¶72 The applicability of the public trust doctrine does not purport to give a riparian owner more rights than those of the public; indeed, the public trust doctrine does not confer riparian rights at all. Riparian rights exist under the common law as private property rights, independent of and subject to the public trust doctrine. Indeed, the public's right to use the waters for purposes recognized under the public trust doctrine may supersede a riparian owner's various rights of use. Bleck, 114 Wis. 2d at 467 ("[Riparian] rights, however, are still subject to the public's paramount right and interest in navigable waters."). Nevertheless, by virtue of owning property on the banks of navigable water, the public trust doctrine puts a riparian owner's exercise of otherwise public rights in a unique position.

> [A] riparian owner upon navigable water, whether or not he own the soil usque ad medium filum aquæ, and unless prohibited by local law, has a right to construct in shoal water, in front of his land, proper wharves or piers, in aid of navigation, and at his peril of obstructing navigation, through the water far enough to reach actually navigable water; this being held to further the public use of the water, to which the public title under the water is subordinate; and therefore to be, in the absence of prohibition, passively licensed by the public, and not a pourpresture.

7

Diedrich, 42 Wis. at 262 (1877).[7]

¶73 If the Lobermeiers owned the entire waterbed beneath the flowage, the Movriches would not be able to maintain and erect a pier because they would enjoy no riparian rights under the common law. Mayer v. Grueber, 29 Wis. 2d 168, 176, 138 N.W.2d 197 (1965). Of course, the owner of land who creates an artificial body of water not originating from natural, navigable water may permit members of the public, as well as owners of land abutting the waterbody, to use the water but under those circumstances such rights of use arise solely from the prerogative of the waterbed owner rather than common law riparian rights or the public trust doctrine. See id. (citing Haase v. Kingston Coop. Creamery Ass'n, 212 Wis. 585, 588, 250 N.W. 444 (1933)). However, the Lobermeiers own only a portion of the waterbed, the public trust doctrine applies to the flowage because it originates from the public, natural, and navigable waters of Sailor Creek, and the Movriches have a fundamental right to place a pier in the water as riparian owners whose land abuts natural, navigable waters.

¶74 "Riparian owners are those who have title to the ownership of land on the bank of a body of water." ABKA Ltd. P'ship v. DNR, 2002 WI 106, ¶57, 255 Wis. 2d 486, 648 N.W.2d 854

_____

[7] "Usque ad medium filum aquæ" means "up to the middle of the stream." Usque Ad Filum Aquæ, Black's Law Dictionary (1st ed. 1891). A "pourpresture," also spelled "purpresture," is "[a]n inclsoure by a private party of a part of that which belongs to and ought to be open and free to the public at large." Purpresture, Black's Law Dictionary (1st ed. 1891).

8

(citing <u>Ellingsworth v. Swiggum</u>, 195 Wis. 2d 142, 148, 536 N.W.2d 112 (Ct. App. 1995)) (emphasis added); <u>see also</u> <u>Diedrich</u>, 42 Wis. at 262 (1877) ("Riparian rights proper are held to rest upon title to the bank of the water, and not upon title to the soil under the water."); <u>Doemel v. Jantz</u>, 180 Wis. 225, 230, 193 N.W. 393 (1923); <u>Mayer v. Grueber</u>, 29 Wis. 2d 168, 173, 138 N.W.2d 197 (1965) ("Riparian land is land so situated with respect to a body of water that, because of such location, the possessor of the land is entitled to the benefits incident to the use of the water." (Citations omitted.)); <u>Stoesser v. Shore Drive P'ship</u>, 172 Wis. 2d 660, 665, 494 N.W.2d 204 (1993) (citing 78 Am. Jur. 2d Waters § 260 (1975)). Riparian rights "are not dependent upon the ownership of the soil under the water, but upon his title to the banks." <u>Doemel</u>, 180 Wis. at 230 (first citing <u>Diedrich</u>, 42 Wis. at 248; then citing <u>Delaplaine v. C.& N.W. Ry. Co.</u>, 42 Wis. 214 (1877); then citing <u>Green Bay, etc., Co. v. Kaukauna Water Power Co.</u>, 90 Wis. 370 (1895); then citing <u>State ex rel. Wausau St. Ry. Co. v. Bancroft</u>, 148 Wis. 124, 134 N.W. 330 (1912)).

¶75 A riparian owner is presumptively entitled to certain rights, including:

> the rights of the owner of lands upon water to maintain his adjacency to it, and to profit by this advantage, and otherwise as a right to preserve and improve the connection of his property with the water. Those rights are not common to the citizens at large, but exist as incidents to the right of soil itself contiguous to and attingent on the water. In such ownership they have their origin, and not out of the ownership of the bed, and they are the same whether the riparian owner owns the soil under the water or not.

_Doemel_, 180 Wis. at 230-31. "The riparian owner also has the right to build piers, harbors, wharves, booms, and similar structures, in aid of navigation, and such right is also one which is incident to the ownership of the upland." _Id._ at 231; _Hicks ex rel. Askew v. Smith_, 109 Wis. 532, 540, 85 N.W. 512 (1901) ("the right to erect such a pier is simply an incident of riparian ownership"). For 140 years, title to the waterbed has been _entirely_ irrelevant to determining riparian ownership under Wisconsin law. _Doemel_, 180 Wis. at 230. And the law presumes that riparian owners may construct a pier in aid of navigation.

¶76 As a preliminary matter, the law presumes the Movriches are riparian owners because they own property that abuts the banks of the Sailor Creek Flowage, a navigable body of water. Nevertheless, "[r]iparian rights do not necessarily follow as a matter of course the ownership of the adjacent land." _Mayer v. Grueber_, 29 Wis. 2d 168, 175, 138 N.W.2d 197 (1965) (citing _Allen v. Weber_, 80 Wis. 531, 536, 50 N.W. 514 (1891)). "No property owner's riparian rights are absolute." _Rock-Koshkonong Lake Dist._, 350 Wis. 2d 45, ¶110. While an owner may be riparian in nature, his ability to exercise riparian rights may be qualified by a number of factors. _Mayer_, 29 Wis. 2d at 175 (citing _Allen_, 80 Wis. at 536). As determinative here, these factors include the classification of the waterbody with which the Movriches' upland property is contiguous coupled with the private ownership of that waterbody's bed, as well as the language in the Movriches' deed.

10

¶77 The Movriches are unquestionably riparian owners because their property lies on the banks of the flowage. The legal description of their property extends "to the shoreline" of the flowage. Yet, the majority holds that the Movriches are not riparians, contrary to every definition of riparian ownership existing in this state's pertinent precedent, dating back to 1877. See supra ¶10. Relying on Mayer, the majority points out that "when Movriches took title to their land, the legal description on their deed made no reference to riparian rights." Majority op., ¶53. The majority equates the deed's silence on riparian rights to the nonexistence of either riparian ownership or riparian rights. This conclusion is patently incorrect.

¶78 It is true "that one who acquires land abutting a stream or body of water may acquire no more than is conveyed by his deed." Mayer, 29 Wis. 2d at 174. It is also true, however, that an owner of waterfront property possesses certain riparian rights under the common law and the common law provides that "a transfer of the property without any reference whatsoever to [riparian] rights automatically conveys and includes them." Doemel v. Jantz, 180 Wis. 225, 230, 193 N.W. 393 (1923) (citing Illinois Cent. R. Co. v. Illinois, 146 U.S. 387 (1892)); Stoesser v. Shore Drive P'ship, 172 Wis. 2d 660, 667, 494 N.W.2d 204 (1993) (citations omitted); Mayer, 29 Wis. 2d at 175. The only way to eliminate riparian rights tied to the property under the common law is "by the clear language in the deed." Mayer, 29 Wis. 2d at 174. In other words, unless the deed

11

expressly disavows riparian rights, property adjacent to navigable water retains presumptive riparian rights, notwithstanding the conveyance documents' silence on this issue.

¶79 The majority acknowledges the Movriches' deed does not mention riparian rights.[8] Therefore, the riparian rights attached to the property were conveyed to the Movriches under common law when they purchased their waterfront property. The deed does not need to expressly mention the status of riparian ownership because the presumption of riparian rights exists by operation of law unless the deed expressly excludes riparian rights.

¶80 Wisconsin qualifies a riparian owner's rights based on the classification of the waterbody to which the riparian property is contiguous. In the case of a natural body of water, "one who acquires land abutting a stream or body of water may acquire no more than is conveyed by his deed," which, as already discussed, means that a deed that expressly severs riparian rights will unequivocally strip the owner of those rights. Id. at 174. In the case of an artificial body of water, as was the case in Mayer, ownership of the waterbed may qualify the existence of riparian rights. Id.

---

[8] The majority suggests the possibility of a different outcome if the "Movriches had purchased their property from Lobermeiers." Majority op., ¶52. However, even if the Movriches had acquired their property from the Lobermeiers, if the deed were silent on riparian rights, as it actually is in this case, riparian rights are nevertheless conveyed under the common law.

12

¶81 In Mayer, we held that "the purchaser of property abutting an artificial lake acquires no rights as a riparian owner by virtue of the land acquisition alone." Id. at 179. Rather, "[u]nless the vendor conveys the right to use the lake, the purchaser is precluded from either the right of access or use." Id.

¶82 The majority's characterization of the flowage as a "man-made" body of water similar to the property in Mayer is incorrect.[9] The flowage was an artificial condition created by a dam, which over time became a natural condition. Regardless, "man-made" lakes and streams are by law artificial waterbodies. Under Wis. Stat. § 30.19(1b)(a), an artificial waterbody is "a body of water that does not have a history of being a lake or stream or of being part of a lake or stream." (Emphasis added.) In Mayer, the artificial lake was "formed as the result of gravel excavations." 29 Wis. 2d at 170. Thus, it had no history of being a lake before seepage filled up the excavation site and created a lake. Id. In contrast, a flowage arises

---

[9] "The artificial condition originally created by the dam became by lapse of time a natural condition." Haase v. Kingston Coop. Creamery Ass'n, 212 Wis. 585, 250 N.W. 444 (1933) (citing Johnson v. Eimerman, 140 Wis. 327, 330, 122 N.W. 775 (1909)); see also Alvin E. Evans, Riparian Rights in Artificial Lakes and Streams, 16 Mo. L. Rev. 93, 108 n.63 (1951) (citing Minehan v. Murphy, 149 Wis. 14, 134 N.W. 1130 (1912)).

13

from the damming of a stream already in existence.[10] Here, the Sailor Creek Flowage was created and is currently maintained by the damming of Sailor Creek, a natural, navigable stream, by the Town of Fifield in 1941 (a fact both parties and the majority concede). Majority op., ¶9. As the flowage has a history of being part of Sailor Creek, it is not an artificial waterbody and Mayer does not apply.

¶83 In a case where a dam overflowed previously dry lands owned in fee, this court held that "the public and the riparian owners enjoy the same rights in and upon such artificial waters," regardless of the fact that the particular body of water on which those rights are subsequently exercised were artificially created by the dam. Haase v. Kingston Coop. Creamery Ass'n., 212 Wis. 585, 587, 250 N.W 444 (1933) (emphasis added). This concept, now discarded by the majority, was recognized over 100 years ago in Johnson v. Eimerman, 140 Wis. 327, 330, 122 N.W. 775 (1909) ("The artificial condition originally created by the dam became by lapse of time a natural condition.") More recently, the "well settled" principle was reiterated: "If the volume or expanse of navigable waters is increased artificially, the public right to use the water is increased correspondingly." Klingeisen v. DNR, 163 Wis. 2d 921,

---

[10] A "flowage" is defined as "[t]he natural movement of water from a dominant estate to a servient estate." Flowage, Black's Law Dictionary (10th ed. 2014); see also Flowage Easement, Black's Law Dictionary (10th ed. 2014) ("A common-law easement that gives the dominant-estate owner the right to flood a servient estate, as when land near a dam is flooded to maintain the dam or to control the water level in a reservoir").

14

927, 472 N.W.2d 603 (Ct. App. 1991). In that case, the court also recognized that title to the waterbed underlying navigable waters "is entirely subordinated to and consistent with the rights of the state to secure and preserve to the people the full enjoyment of navigability and the rights incident thereto." Id. at 928 (citing Diana Shooting Club v. Husting, 156 Wis. 269, 271, 145 N.W. 816 (1914)).

¶84 Subject to the public trust doctrine, "Wisconsin has . . . recognized the existence of certain common law rights that are incidents of riparian ownership of property adjacent to a body of water." R.W. Docks & Slips v. DNR, 244 Wis. 2d 497, 511, 628 N.W.2d 781 (2001) (citing Bleck, 114 Wis. 2d at 466). Such rights include "the right, now conditioned by statute, to construct a pier or similar structure in aid of navigation." Id. (citing Cassidy v. DNR, 132 Wis. 2d 153, 159, 390 N.W.2d 81 (Ct. App. 1986). Subject to a few exceptions not relevant here, "nothing in [Wis. Stat. ch. 30] applies to an artificial waterbody, as defined in s. 30.19(1b)(a), that is not hydrologically connected to a natural navigable waterway and that does not discharge into a natural navigable waterway except as a result of storm events." Wis. Stat. § 30.053. As the Sailor Creek Flowage is hydrologically connected to Sailor Creek, it is not an artificial waterbody. While Wis. Stat. ch. 30 was enacted after the creation of the flowage, "[t]he statute did not claim to alter the common law" and "[i]t is fundamental that a statute should be construed in harmony with the common law . . . unless a different construction is plainly expressed."

15

Klingeisen v. DNR, 163 Wis. 2d 921, 930, 472 N.W.2d 603 (Ct. App. 1991).

¶85 In attempting to distinguish the flowage from other natural waterbodies subject to Wis. Stat. ch. 30, the majority mistakenly limits the holding in Doemel v. Jantz to waterbodies that are public, navigable, and natural. Assuming that "[Lake Winnebago] is not man-made" and that "as far as we can tell, no portion of Lake Winnebago's waterbed is privately owned," the majority holds that Doemel is not dispositive. Majority op., ¶43. Setting aside the fact that Doemel is silent on the nature of Lake Winnebago's hydrological makeup or the ownership of Lake Winnebago's lakebed, Doemel controls the outcome here because the flowage in this case is entirely analogous to Lake Winnebago for the purpose of determining whether the Movriches should be able to install a pier. Like Lake Winnebago, Sailor Creek Flowage is navigable under the public trust doctrine and therefore it is public. And while its existence depended upon human intervention, it is hydrologically connected to a natural navigable waterway (i.e., Sailor Creek) and therefore it is not an artificial waterbody under Wis. Stat. § 30.19(1b)(a). Mayer, therefore, does not extinguish the Movriches' common law riparian rights.

¶86 The next question is whether the Lobermeiers' private property rights in the waterbed trump the Movriches' riparian rights, preventing the Movriches from maintaining a pier anchored in the waterbed adjacent to the Movriches' shoreline

16

property. The right of a riparian to maintain a pier is subject to the following statutory limitations:

1. "A wharf or pier which <u>interferes with public rights in navigable waters</u> constitutes an unlawful obstruction of navigable waters unless the wharf or pier is authorized under a permit issued under s. 30.12 or unless other authorization for the wharf or pier is expressly provided." Wis. Stat. 30.13(4)(a) (emphasis added).

2. "A wharf or pier which <u>interferes with rights of other riparian owners</u> constitutes an unlawful obstruction of navigable waters unless the wharf or pier is authorized under a permit issued under s. 30.12 or unless other authorization for the wharf or pier is expressly provided." Wis. Stat. 30.13(4)(b) (emphasis added).

Notably, the right to maintain a pier is in no way statutorily limited by the rights of non-riparian owners.[11]

¶87 The nature of the flowage bed's title is also distinguishable from that of the private lakebed in <u>Mayer</u>, which was entirely owned by a single owner. In <u>Mayer</u>, this court recognized that in the case of an artificial waterbody, like the artificial lake in <u>Mayer</u>, "the title to the land remains in the owner and does not become vested in the state." 29 Wis. 2d at 176 (citing <u>Haase v. Kingston Coop. Creamery Ass'n</u>, 212

---

[11] Wisconsin Stat. § 30.13 provides limited means by which non-riparian owners may maintain a pier. This section mainly considers the rights of easement holders and is not relevant here.

17

Wis. 585, 588, 250 N.W. 444 (1933)). <u>Mayer</u>'s holding is limited to "[a]n artificial lake located wholly on the property of a single owner." <u>Id.</u> Here, although title to a portion of the flowage bed remains with the Lobermeiers, their title is qualified because of the presence of navigable water over the bed.

¶88 This principle arises from <u>Minehan v. Murphy</u>, 149 Wis. 14, 134 N.W. 1130 (1912), where the plaintiff brought an action for ejectment when the defendant adversely occupied the bed of an artificially enhanced stream by crossing over from his side of the stream's thread and onto the plaintiff's submerged property.[12] The stream in question had previously been non-navigable, but upon damming of the mouth and flooding of the privately-owned former uplands the stream was rendered navigable, such that "the former private title had become changed to the same character of <u>qualified title</u> as that of riparian proprietors to the beds of navigable rivers in general." <u>Id.</u> at 16 (emphasis added). Likewise, damming a stream and creating a flowage, which in character and shape may resemble a lake, does not transfer ownership of the bed to be held in trust to the state. Rather, like that of a streambed, the title of the flowage bed is privately-held, but qualified by the presence of navigable waters. <u>See e.g.</u>, <u>Ne-Pee-Nauk Club v. Wilson</u>, 96 Wis. 290, 295, 71 N.W. 661 (1897); <u>Rock-Koshkonong Lake Dist.</u>, 350 Wis. 2d 45, ¶78.

---

[12] The court does not elucidate the exact details of the defendant's impermissible occupancy.

18

¶89 The plaintiff's action for ejectment was ultimately successful in Minehan, based in part upon her status as a riparian whose title to the bed of the navigable water bounding the banks of her land was "incidental to her title to the bank." Minehan, 149 Wis. at 14. The court's articulation of the rule that title to private property submerged by navigable waters becomes qualified in the same sense as the qualified title of riparians to the beds of navigable waters, is particularly instructive here. Private title enjoys no heightened status vis-à-vis riparian title; rather, "the former private title had become changed to the same character of qualified title as that of riparian proprietors to the beds of navigable rivers in general." Id. at 16. Unlike the riparian plaintiff in Minehan, who not only owned the waterbed, but also had title to the upland property along the banks, the Lobermeiers merely own the flowage bed. The crux of the issue is whether the Lobermeiers may exclude the Movriches from erecting and maintaining a pier by virtue of owning only a portion of the flowage bed.

¶90 Because the Lobermeiers do not own property on the bank of a waterbody, they are not riparian owners. And while they retain ownership of a portion of the flowage bed in fee simple, that title is qualified by the presence of navigable waters. The majority wholly relies upon the Lobermeiers' ownership of the flowage bed in fee simple absolute to reach its conclusion that the Movriches are not entitled to erect and maintain a pier. Majority op., ¶¶17-21, 32 n.9. The majority cites a string of cases that do not contemplate the presence of

19

navigable water over the land. Id. No authority in Wisconsin or in any other jurisdiction has adopted the majority's reasoning or otherwise restricted placement of a pier on navigable waters by a riparian owner in favor of non-riparian, fee simple ownership of the waterbed. The presence of navigable waters qualifies the Lobermeiers' title to the flowage bed subject to the public trust doctrine and the rights of riparian owners along the banks of the flowage. As riparian owners, the Movriches are entitled to exercise riparian rights to access the surface waters and to have their pier rest on the flowage bed.

¶91 Over one hundred years ago, this court expounded the "well settled" principle that "if the volume or expanse of navigable waters be increased artificially, the public right is correspondingly increased." Village of Pewaukee v. Savoy, 103 Wis. 271, 277, 79 N.W. 436 (1899). Specifically, the court in Savoy expanded the state's ownership rights in natural waterbeds to artificially submerged lands maintained for more than 20 years at an artificially high water level, concluding that "an artificial condition, by lapse of time . . . becomes the natural condition." Id. at 275. Three decades later, the court determined it was unnecessary to vest title to the artificially submerged land in the state in order to protect the public's rights under the public trust doctrine. Haase, 212 Wis. at 587. Nevertheless, the court in Haase reiterated the rule of law the majority should have applied here: "It is true that, where the waters of a natural, navigable lake are artificially raised, the

20

public and the riparian owners enjoy the same rights in and upon such artificial waters." Id.

¶92 The Sailor Creek Flowage was created 76 years ago and has been maintained for more than 50 years beyond the 20-year timeframe deemed sufficient to qualify the fee simple rights enjoyed by the owners of the underlying lakebed. The flowage, created artificially by construction of a dam, submerged privately owned land with the permission of the owner. Over time, during the three quarters of a century this land has remained submerged, both riparian rights as well as public trust rights extended to this artificial expansion of Sailor Creek. While the creation of the flowage did not transfer any property rights from the Lobermeiers to either the state or the Movriches, it subordinated the Lobermeiers' property rights to riparian rights under the common law as well as public rights under the public trust doctrine. While this reconciliation of three distinct rights perhaps leaves the Lobermeiers with property of limited value, this construction of the law takes nothing from the Lobermeiers and preserves what has always been, as reflected in the $400 assessed value of the flowage bed owned by the Lobermeiers. In contrast, the majority strips the Movriches of their riparian rights and reallocates them to the Lobermeiers.

¶93 Unfortunately, the majority's opinion diminishes not only the value of the Movriches' property, but also potentially guts the values of all properties abutting flowages throughout Wisconsin. The breadth of the majority's opinion calls into

question the terms of deeds to such waterfront properties, the validity of prior conveyances, and the extent of ownership interests. The majority's transfiguration of the common law governing riparian rights disturbs the reliance on access that induced purchases of waterfront property in Wisconsin for over a century.

II

¶94 By eschewing decades of controlling precedent in order to elevate fee simple property rights in a waterbed, unattached to shoreline property ownership, the court effectively extinguishes the property rights of thousands of waterfront property owners along flowages, while jeopardizing the property rights of waterfront property owners on all bodies of water in Wisconsin. A change in the law of this magnitude should come from the legislature, not this court. Accordingly, I respectfully dissent from that part of the majority opinion that effectuates such a redistribution of property rights with no compensation to those left with substantially diminished property values and concur only in that part of the majority opinion that preserves the public's right to access the flowage waters.

¶95 I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

¶96 I am also authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this opinion except for Part II.

22